**STATE of Iowa, Appellee,**

v.

**Richard W. MORITZ, Appellant.**

**No. 62991.**

Supreme Court of Iowa.

June 18, 1980.

Greg A. Egbers, of Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, for appellant.

Thomas J. Miller, Atty. Gen., Selwyn L. Dallyn, Asst. Atty. Gen., and William E. Davis, Scott County Atty., for appellee.

Considered by REES, P. J., and UHLEN-HOPP, McCORMICK, McGIVERIN, and LARSON, JJ.

UHLENHOPP, Justice.

This appeal requires us to consider challenges by a deputy sheriff to his conviction on charges arising from his receipt of mileage fees for service of legal papers. References are to the 1977 Iowa Code unless otherwise stated.

As part of his duties as a Scott County deputy sheriff, defendant Richard W. Moritz supervised the service of legal papers by the sheriff's office and the accounting of funds generated by service. To cover the costs of serving civil papers, sections 79.9 and 337.11(10) of the 1977 Code provide that sheriffs are entitled to collect fifteen cents for every mile driven by their deputies in private cars to serve the papers. Under Moritz' supervision, Scott County deputies were instructed to charge attorneys flat dollar amounts calculated according to geographical zones, rather than the statutory rate. The funds generated by this system exceeded those authorized by law. The officers who actually served the papers received half of the amount charged; Moritz received a portion of the remaining funds each month. Although Scott County Sheriff Kenneth R. Paulsen took the largest share of those remaining funds, Moritz' portion ranged from $150 per month in mid-1973 to $250 per month in mid-1977.

On March 30, 1978, the State filed two informations charging Moritz with violations of sections 739.10 (accepting award for public duty) and 740.1 (extortion), as well as with conspiracy to commit those crimes. See § 719.1, The Code 1977. The information alleging violation of section 739.10 and of conspiracy to violate that section involved a specific act on January 7, 1977. The information alleging violation of section 740.1 and conspiracy to violate that section involved an incident on November 3, 1976. On June 29, 1978, the State orally moved to dismiss the original informations "in the interests of justice," and the motion was sustained by the district court. On the same day the State filed a new information again charging Moritz with violation of section 739.10 and with conspiracy to violate that section, involving an activity which allegedly occurred on April 5, 1977. See §§ 719.1, 739.10, The Code. Moritz filed a motion to dismiss the June 29 information on the ground that the crimes it charged were the same as those alleged in the previous informations, and that the previous informations should have been dismissed with prejudice for speedy trial reasons. The district court overruled the motion on the ground that, although the previously filed informations should have been dismissed with prejudice because of the prosecution's failure to provide a speedy trial thereon, the crimes alleged in the June 29 information constituted separate and distinct

charges from those alleged originally. We denied Moritz' petition for a writ of certiorari to review that ruling on October 28, 1978.

Prior to the trial of this case Moritz filed three additional motions to dismiss which were overruled by the district court. Four days before trial the State filed a motion to amend the June 29 information to add as co-conspirators Sheriff Paulsen and two other deputy sheriffs. The district court granted the motion to amend over Moritz' protest of prejudice based on tardiness.

At the close of the State's evidence at trial and again at the close of all the evidence, Moritz moved for a directed verdict of acquittal. The trial court overruled both motions, and the jury found Moritz guilty of violating section 740.10 (taking more than a lawful fee, ruled by the trial court to be a lesser included offense of section 739.-10) and of conspiracy to violate section 739.-10. Moritz then filed motions for a new trial and for arrest of judgment asserting numerous errors by the trial court. The court overruled the motions and passed sentence, and Moritz appealed.

I. *Speedy trial.* We first take up Moritz' speedy trial contention.

■ A. *Validity of June 29 charges.* One of Moritz' arguments is that the court's dismissal of the original informations and the subsequent prosecution under the June 29 information violated his right to a speedy trial under section 795.2 of the 1977 Code as this court construed the section in *State v. Johnson*, 217 N.W.2d 609, 612 (Iowa 1974). Section 795.2 provides in part:

> If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial within sixty days after the indictment is found, the court must order it to be dismissed, unless good cause to the contrary be shown.

In *Johnson* this court held that when charges for a particular offense have been dismissed under section 795.2 the State may not subsequently file charges for that same offense, and that to hold otherwise would "drain [section 795.2] of its force and effectiveness in protecting the accused's right to a speedy trial." *Id.* at 612. Moritz contends that *Johnson* is applicable here and his conviction must therefore be reversed.

For *Johnson* to apply two factors must exist. First, the dismissal of the original charge must have been for speedy trial reasons rather than for such "good cause" as the facilitation of evidence-gathering, procurement of witnesses, or plea bargaining. *Id.* at 613. Second, the later-filed charge must be for the same offense as originally.

The district court specifically ruled that the original informations "should have been dismissed with prejudice by the Court for failure to bring the Defendants to trial within 60 days of the Informations, pursuant to Section 795.2 of the Code." The State does not challenge that finding. Although at one time the State claimed it could show "good cause" for the delay in Moritz' arraignment and trial, the record shows it dismissed the original informations twenty-seven days later "in the interests of justice" with no further pleading or proof on the good cause issue. We thus accept the finding of the district court that the State dismissed the original informations to avoid the consequences of its failure to bring Moritz to trial within sixty days.

The district court declined however to apply *Johnson* to this case, concluding that the charges in the June 29 information are "distinct and separate" from those in the original informations. It based this conclusion on the ground that the June 29 information alleged offenses occurring on different dates than those in the original informations. Because of differences in the crimes of which Moritz was convicted, we will consider them separately.

1. *Acceptance of more than lawful fee.* In the context of double jeopardy, we have adopted the "same evidence" test for determining whether two alleged offenses are the same. We believe that rationale is applicable here:

> The rule now generally recognized is that, in order that the plea of former

jeopardy may be available, it must appear that the two offenses are in substance the same, or of the same nature, or same species, so that the evidence which proves one would prove the other.

*State v. Stewart,* 223 N.W.2d 250, 251 (Iowa 1974), *cert. denied,* 423 U.S. 902, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975) (citations omitted).

▉ Applying this test to the two section 739.10 violations with which Moritz was charged originally and later, plainly the evidence which would sustain a conviction on one would not sustain a conviction on the other. The section 739.10 offense requires an overt act as one of its elements—acceptance of valuable consideration for performance of an official act. Because the section 739.10 violation charged in the original informations alleged a different overt act than the one in the June 29 information, both charges could not be sustained on the same evidence and each one constituted a separate offense. *See Lunsford v. United States,* 200 F.2d 237, 238 (10th Cir. 1952) (circuit court found two bribery charges to be separate where the alleged transactions occurred on different dates, even though same parties were involved). *See also, State v. Cabbell,* 252 N.W.2d 451, 453 (Iowa 1977); *State v. Morgan,* 155 Iowa 482, 484, 136 N.W. 521, 522 (1912).

▉ *2. Conspiracy.* The conspiracy charges involve a somewhat different analysis. The offense of conspiracy charged here consists essentially of an agreement to commit some "illegal act injurious to the public trade, health, morals, or police, or to the administration of public justice." § 719.-1, The Code. The State did not have to prove any overt act in furtherance of the agreement. *Compare State v. Tebo,* 256 Iowa 449, 450, 127 N.W.2d 646, 647 (1964), *with* § 706.1, The Code 1979. Because an agreement is the primary element of a conspiracy charge, the nature of the agreement between conspirators determines whether a single overall conspiracy or separate conspiracies have occurred. *See United States v. Palermo,* 410 F.2d 468, 470 (7th Cir. 1969).

▉ A single conspiratorial agreement may not be divided arbitrarily in such way as to permit multiple charges. *See, e. g., United States v. Papa,* 533 F.2d 815, 820 (2d Cir. 1976); *United States v. Young,* 503 F.2d 1072, 1075 (3d Cir. 1974); *Palermo,* 410 F.2d at 470. The United States Supreme Court stated the principle thus:

Whether the object of a single agreement is to commit one crime or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

.  .  .  Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes.

*Braverman v. United States,* 317 U.S. 49, 53–54, 63 S.Ct. 99, 102, 87 L.Ed. 23, 28 (1942). This court expressed very similar views in the earlier case of *State v. Grant,* 86 Iowa 216, 223–24, 53 N.W. 120, 122 (1892):

It is insisted with much confidence that the indictment charges more than one offense because the object, aim, and purpose of the conspiracy is charged to be to obtain the signature of the several persons to several and distinct notes, and it is said each of these transactions constitutes a separate offense. The agreement to do these several acts, though consummated at different times, and with different individuals, and in some cases by different employes [*sic*] of the defendants, is charged as constituting a single conspiracy.  .  .  .  The design charged was to obtain the signatures of all the parties named and others unknown to notes. Must it be held, then, that although there was but one agreement or arrangement which embraced the intention to procure all these notes, as to each note and each individual the conspiracy was separate? Manifestly, such cannot be the law.  .  .  .  While in one sense

the procuring of the signature of each individual to a note was a distinct transaction, yet each and all together constituted a single illegal aim, object, purpose, and agreement, and but a single offense.

The question therefore is whether Moritz was a party to only one conspiracy or, as the State contends, a succession of separable conspiracies. For guidance in resolving that question, the language of the United States Supreme Court is helpful in *United States v. Kissel*, 218 U.S. 601, 607, 31 S.Ct. 124, 126, 54 L.Ed. 1168, 1178 (1910):

> [W]hen the plot contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up, and there is such continuous co-operation, it is a perversion of natural thought and of natural language to call such continuous co-operation a cinematographic series of distinct conspiracies, rather than to call it a single one.

■ Examination of *Kissel* and other decisions reveals that certain factors have been found persuasive in determining whether a single conspiracy has been arbitrarily divided into several conspiracies. Those factors include the question of whether the allegedly separate conspiracies share common objects, *see Blumenthal v. United States*, 332 U.S. 539, 558, 68 S.Ct. 248, 257, 92 L.Ed. 154, 168–69 (1947); *United States v. Amato*, 367 F.Supp. 547, 550 (S.D.N.Y.1973); *State v. Louf*, 126 N.J.Super. 321, 341, 314 A.2d 376, 383 (1973), whether they involve the same co-conspirators, *see Papa*, 533 F.2d at 820; *United States v. Moore*, 522 F.2d 1068, 1078 (9th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976); *United States v. O'Dell*, 462 F.2d 224, 226 n.2 (6th Cir. 1972), whether continuity existed between the allegedly separate offenses, *see Kissel*, 218 U.S. at 607, 31 S.Ct. at 126, 54 L.Ed. at 1178; *United States v. Palermo*, 410 F.2d 468, 470 (7th Cir. 1969); *Louf*, 126 N.J.Super. at 342, 314 A.2d at 383, and whether the alleged offense occurred in the same time and place, *United States v. Mallah*, 503 F.2d 971, 983 (2nd Cir. 1974), *cert.*

*denied*, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975).

■ Returning to these facts, Moritz engaged in one overall scheme. The two alleged conspiracies had a common object—to collect and divide among the conspirators greater mileage expenses than allowed by law. Both of the alleged conspiracies involved the same co-conspirator—Kenneth R. Paulsen. Although the June 29 information was amended to include two additional co-conspirators not charged in the original informations, the evidence shows those individuals could have been included in the original informations as well. Most important, the evidence shows that both of the alleged conspiracies were part of and consistent with a continuous course of collecting and dividing mileage expenses that had been going on for at least four years. Thus the bookkeeper for the sheriff's office testified that Moritz received monthly checks from the illegal account from August 1973 until April 1977. The separately alleged conspiracies were part of an overall scheme to collect and divide service funds illegally.

■ The State is right that the alleged conspiracies involved different victims and different trips for service of process, and that the informations allege specific events occurring four months apart. But different victims cannot alone justify a finding of separate conspiracies; a single conspiracy may be aimed at a broad group of individuals. *See O'Dell*, 462 F.2d at 227 n.2; *Grant*, 86 Iowa at 224, 53 N.W. at 122. Similarly, different trips occurring four months apart are not determinative. As this court said in *Grant*, a single conspiracy "may contemplate dealings with one man or many, or at the same or different times, in relation to the same or different matters." 86 Iowa at 224, 53 N.W. at 122.

The conspiracy charge alleged in the June 29 information was in law the same conspiracy charge as in the prior informations. Because the first informations were dismissed for speedy trial reasons, Moritz' conviction on the second conspiracy charge must be dismissed.

We will consider the other issues in the appeal only as they relate to Moritz' section 740.10 conviction.

B. *Delay in prosecuting second information.* Moritz contends that his right to a speedy trial under section 795.2 was violated also by the delay which occurred between the filing of the June 29 information and his prosecution on those charges. The chronology of events is this: on June 29, 1978, the information was filed; on July 7 Moritz and his co-defendants filed a motion to dismiss alleging four separate grounds for dismissal; on July 12 defendants refused to enter a plea and requested time to prepare motions; on August 21 the court held a hearing on the first motion, at which defendants filed a second motion to dismiss and again refused to enter a plea; on August 24 the court overruled the first motion, and defendants orally requested and were granted a stay of proceedings for the purpose of filing a writ of certiorari to this court; on October 16 we denied a writ; and on November 22 the district court ruled on defendants' second motion, and defendants prospectively waived their speedy trial rights.

The district court held that the preceding events did not deprive Moritz of speedy trial under section 795.2. It found the State had shown good cause for failing to bring Moritz to trial within sixty days of June 29, basing the finding on the delay caused by defendants' own motions which were all "more than routine," the stay of proceedings granted at their request, and the involvement by the State's counsel in the prosecution of a separate but related case during the time in question. The four grounds for dismissal asserted in defendants' first motion, for example, were: (1) denial of speedy trial, (2) denial of due process due to "prosecutorial vindictiveness and fundamental unfairness" in refiling of charges, (3) double jeopardy, and (4) a section 795.5 bar to prosecution on misdemeanor charges.

■ We recently reconsidered the relevant circumstances in determining "good cause" for delay. *State v. Petersen,* 288 N.W.2d 332, 335 (Iowa 1980) (construing Iowa R.Crim.P. 27(2)(b)). Although the reason for the delay is the "sole factor" for determining good cause, such other circumstances as the length of the delay, the defendant's request for speedy trial, and prejudice resulting from the delay may affect the strength of the reason which is necessary for good cause. *Id.*

■ The trial court did not err in refusing to dismiss the prosecution on speedy trial grounds. Moritz did not demand a speedy trial, and he asserts no prejudice from the delay. He concedes that the delay of fifty-three days as a result of his petition for a writ of certiorari is "attributable to defendant" and should therefore not be taken into account. *See State v. Albertsen,* 228 N.W.2d 94, 97 (Iowa 1975). That leaves for our consideration a delay of ninety-three days, or thirty-three days longer than the sixty-day limit in section 795.2. In view of the complexity of the multiple motions filed by Moritz and his co-defendants and the county attorney's participation in the prosecution of a separate, related case during the time in question, we do not believe the district court erred in refusing to dismiss prosecution of the section 739.10 charge.

■ II. *Due process and double jeopardy.* Moritz next argues that the State's dismissal of the original informations and its refiling of "substantially identical" charges violates due process in that it constitutes "vindictive prosecution" and violates principles of fundamental fairness. He also contends that the procedure placed him in double jeopardy.

We find no merit in these arguments. The United States Supreme Court decisions which have discussed "prosecutorial vindictiveness" have uniformly involved increased punishment of a defendant upon retrial after a successful appeal. *See, e. g., Blackledge v. Perry,* 417 U.S. 21, 28, 94 S.Ct. 2098, 2101, 40 L.Ed.2d 628, 634 (1974); *Chaffin v. Stynchcombe,* 412 U.S. 17, 19–20, 93 S.Ct. 1977, 1979, 36 L.Ed.2d 714, 719 (1973); *North Carolina v. Pearce,* 395 U.S.

711, 713, 89 S.Ct. 2072, 2074, 23 L.Ed.2d 656, 664 (1969). This is not such a case and we find no ground for Moritz' allegation of "vindictive prosecution."

The cases Moritz cites in support of his fundamental fairness argument similarly involve situations where defendants faced increased punishment after exercising constitutional or statutory rights; the cases are therefore inapplicable. *See Blackledge v. Perry*, 417 U.S. 21, 28, 94 S.Ct. 2098, 2101, 40 L.Ed.2d 628, 634 (1974); *United States v. Groves*, 571 F.2d 450, 453 (9th Cir. 1978); *United States v. DeMarco*, 550 F.2d 1224, 1226 (9th Cir.), *cert. denied*, 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85 (1977); *United States v. Andrews*, 444 F.Supp. 1238, 1239 (E.D.Mich. 1978).

■ Our holding that the section 739.10 violation charged in the June 29 information was separate and distinct from the charge in the earlier informations nullifies Moritz' double jeopardy argument. Moreover, jeopardy attaches only when a jury is sworn but the prosecution of the original informations never reached that stage. *See State v. Birkestrand*, 239 N.W.2d 353, 363 (Iowa 1976).

III. *Applicability of section 739.10.* Moritz argues that section 739.10 excludes from its coverage all sheriffs and deputy sheriffs, hence the charge based on that section should have been dismissed. With the dismissal of that charge, he argues, the lesser included offense also falls. He bases this contention on the language of section 739.10 which makes the section applicable to "any state, county, township, city, school, or other municipal officer, *not mentioned in this chapter*." (Emphasis added.) Because section 739.9 specifically mentions sheriffs and deputy sheriffs, Moritz contends that section 739.10 does not apply to those officers.

■ We do not agree with Moritz that sheriffs and deputy sheriffs are outside the scope of section 739.10. We read the language of section 739.10 we have emphasized to modify only the words "municipal officer." The emphasized phrase does not ap-ply to state, county, township, city, or school officers. Because Moritz as a deputy sheriff is a county officer, *see* § 340.8, The Code, he falls within the scope of section 739.10. This construction is consistent with the treatment of the statutory forerunner of section 739.10 in *Maggi v. Cassiday*, 190 Iowa 933, 935, 181 N.W. 27, 28–29 (1921) (applying section 4885 of the 1897 Code to sheriff).

■ IV. *Combination of conspiracy charge with charge for underlying offense.* Moritz contends the district court erred in denying his motion to dismiss on the ground he could not be convicted for both conspiracy to commit an offense and the offense itself. Although Moritz cites no case authority in support of that theory, he quotes section 706.4 of the current Iowa Criminal Code which provides that "[a] person may not be convicted and sentenced for both the conspiracy and for the public offense."

Previous to the new criminal code this court upheld a defendant's conviction for both conspiracy to commit an offense and the offense itself contrary to the contention that the defendant was thereby placed in double jeopardy. *State v. Reynolds*, 250 N.W.2d 434, 439 (Iowa 1977). *Accord, United States v. Cortwright*, 528 F.2d 168, 176 (7th Cir. 1975); *United States v. Seelig*, 498 F.2d 109, 112 (5th Cir. 1974); *United States v. Boyle*, 482 F.2d 755, 766 (D.C.Cir.), *cert. denied*, 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973); *United States v. Fishbein*, 446 F.2d 1201, 1205 (9th Cir.), *cert. denied*, 404 U.S. 1019, 92 S.Ct. 683, 30 L.Ed.2d 667 (1971); *People v. Grass*, 180 Colo. 346, 505 P.2d 1301, 1302 (1972); *Arnett v. Meade*, 462 S.W.2d 940, 944 (Ky. 1971); *Wilson v. State*, 8 Md.App. 653, 673, 262 A.2d 91, 103 (1970); *State v. Cox*, 101 N.J.Super. 470, 475, 244 A.2d 693, 698 (1968). *See also*, 16 Am.Jur.2d *Conspiracy* § 7 (1979); 22 C.J.S. *Criminal Law* § 288, at 755 (1961). Our ruling in *Reynolds* is dispositive of Moritz' contention.

Although Moritz correctly notes that under the current Iowa Criminal Code the contrary is the rule, that is of no avail to him here. The offense in question was

allegedly committed at the time of the 1977 Code, and Moritz was charged and convicted under that Code. The 1977 Code contains no provision analogous to section 706.4 of the 1979 Code. The general rule under section 801.5 of the current code is that the current code does "not apply to offenses [completed] before January 1, 1978." The section contains two exceptions but they apply only to (1) cases "pending on or commenced after [January 1, 1978], and (2) provisions of the [current code] "governing the release [and] discharge of prisoners, probationers, and parolees." § 801.5(3), The Code 1979. Because this case was tried prior to January 1, 1978, and the current code section Moritz relies on does not involve the release and discharge of prisoners, we decline to apply current section 706.4. *See State v. Cuevas*, 288 N.W.2d 525, 527 (Iowa 1980). The trial court did not err in refusing to dismiss the information for charging both conspiracy to commit an offense and the offense itself. Hence we have no reason to consider the effect on Moritz' argument of our reversal of the conspiracy conviction.

■ V. *Ruling on hearsay objection.* Moritz urges that the trial court erred in sustaining the State's hearsay objection to his proffered testimony regarding a Scott County Attorney's opinion on the legality of the Scott County mileage expense system. In an offer of proof Moritz testified that the Scott County Attorney told Sheriff Paulsen, who in turn told Moritz, that "there was nothing wrong with the system" and that Moritz thereafter relied "one-hundred percent" on that opinion. Moritz attempted to introduce that testimony to show his good faith reliance on a county attorney's opinion.

The trial court's ruling was correct. " ' "Hearsay" is a statement, other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' " *State v. Horn*, 282 N.W.2d 717, 724 (Iowa 1979) (quoting *State v. Miller*, 204 N.W.2d 834, 840 (Iowa 1973)). In determining whether a statement constitutes hearsay,

we look to the purpose for which the testimony is offered. *Horn*, 282 N.W.2d at 724.

Moritz claims in substance (a) the county attorney advised that the fee practice was legal and (b) Moritz relied on the advice. We will assume without deciding that those facts if established would constitute a defense. The problem is with Moritz' proof that the county attorney gave the advice. He testified in his offer that the sheriff told him what the county attorney told the sheriff. If Moritz had testified that the county attorney gave him the advice personally, he would not be introducing the county attorney's out-of-court statement to prove its truth but only to prove that it was given—plus, of course, that he relied on it. The county attorney's statement would be independently relevant. *Crane v. Cedar Rapids & Iowa City Railway Co.*, 160 N.W.2d 838, 845–46 (Iowa 1968), *aff'd*, 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969); *United States v. Wellendorf*, 574 F.2d 1289, 1290 (5th Cir. 1978); VI J. Wigmore, Evidence § 1789, at 235–37 (3d ed. 1940). The essential requirement of the hearsay rule would be satisfied because Moritz would be subject to cross-examination regarding the statement he allegedly heard. V J. Wigmore, Evidence § 1365 (Chadbourn rev. 1974).

But those are not our facts. According to the offer of proof, the advice allegedly passed through an intermediary, the sheriff. Did the county attorney actually give the sheriff the advice? Did the sheriff understand it correctly? Did he accurately relay it to Moritz? The sheriff is not a witness; he is not subject to cross-examination. Moritz is using the sheriff's out-of-court statement to him to prove the truth of what the sheriff stated, that the county attorney gave the advice. This is hearsay. Because the probative value of the testimony Moritz attempted to introduce was in substantial part dependent on the veracity of an out-of-court observer, the trial court's ruling was right.

■ VI. *Instruction on impeachment.* Moritz objects on two grounds to the trial court's instruction regarding impeachment

of witnesses. First he asserts that the instruction was not supported by the evidence because his testimony at trial "was in no way inconsistent with [his] testimony in front of the grand jury which was the basis for the impeachment instruction." Second he argues that his prior grand jury testimony was illegally obtained and that it therefore could not be used to impeach him at trial.

We disagree with Moritz' assertion that his trial testimony "was in no way" inconsistent with his grand jury testimony. An example of the inconsistency is his trial testimony that his office was not charging more than fifteen cents per mile under the zone system and his grand jury statements that his deputies were "probably making more than fifteen cents per mile" for their service duties and that "[t]hey received extra money on that mileage."

We do not reach the second ground for the reason that Moritz did not raise it at trial. We do not consider issues which were not presented to the trial court. *See, e. g., Shinrone, Inc. v. Tasco, Inc.,* 283 N.W.2d 280, 286 (Iowa 1979); *In re Staros,* 280 N.W.2d 409, 411 (Iowa 1979).

Moritz urges other arguments but he either failed to preserve error regarding them or they relate to the conspiracy conviction which we reverse.

We return the case to district court for dismissal of the conspiracy charge. We uphold the conviction of the included offense but believe the district court should re-sentence Moritz for that conviction, and we return the case for that purpose also. In connection with the conspiracy sentence the trial court ordered restitution, and the court stated at the sentencing hearing on the two offenses, "I think he ought to give [the unlawful fees] back, and I'm going to try and order it if there is any way I can do it. And frankly, *it has a bearing on what else I do here today.*" (Emphasis added.) We do not suggest what the sentence should be for the included offense but direct the district court to impose sentence anew without considering the conspiracy conviction which we reverse.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.