# In the Iowa Supreme Court

No. 23–0819

Submitted September 11, 2024—Filed October 18, 2024

**State of Iowa,**

Appellee,

vs.

**Sarah Rae Berg,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, William Patrick Wegman, judge.

A defendant appeals her conviction for unauthorized use of a credit card as violating the speedy-indictment rule following her arrest for fourth-degree theft. **Decision of Court of Appeals and District Court Judgment Affirmed.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Jessica Maffitt (argued) of Benzoni & Maffitt Law Office, P.L.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino (argued), Assistant Attorney General, for appellee.

**Oxley, Justice.**

Sarah Berg used her access as a Casey's employee to activate Casey's, Amazon, and Visa gift cards without paying for them and then used the Casey's card to purchase gas the following day. She was arrested for fourth-degree theft under Iowa Code section 714.2(4) (2022). After the county attorney failed to file a trial information by the speedy-indictment deadline for that charge, he filed a trial information for a different charge—unauthorized use of a credit card in violation of section 715A.6(2). The district court denied Berg's motion to dismiss the trial information as a violation of speedy indictment and found her guilty following a trial on the minutes.

Our speedy-indictment rule bars the state from bringing formal charges against an accused more than forty-five days after she has been arrested "for the commission of a public offense." Iowa R. Crim. P. 2.33(2)(*a*) (2022).[1] But the rule only applies to the public offense for which the accused was arrested. It does not preclude filing charges for a different offense. Berg asks us to conclude that fourth-degree theft and unauthorized use of a credit card as charged here are the same offense by broadly applying language from *State v. Abrahamson*, where we said that whether subsequent charges are for the same offense for speedy-trial purposes depends on whether they "are in substance the same, or of the same nature, or same species, so that the evidence which proves one would prove the other." 746 N.W.2d 270, 275 (Iowa 2008) (quoting *State v. Moritz*, 293 N.W.2d 235, 238–39 (Iowa 1980)). As explained below, our precedents—including *Abrahamson*—support the district court's decision denying Berg's motion to dismiss.

---

[1]The Iowa Supreme Court adopted revised Iowa Rules of Criminal Procedure effective July 1, 2023. All references to the Iowa Rules of Criminal Procedure in this case are to the rules in effect prior to July 1, 2023.

I.

Sarah Berg worked at the Casey's General Store on Lafayette Road in Evansdale. On July 21, 2022, Berg's manager, Brandie Dobbs, discovered that Berg had activated three gift cards without paying for them. She confronted Berg and called the police to report an employee theft. In a "voluntary team member statement" Berg wrote after Dobbs confronted her, Berg said:

> I took 2 gift cards. I panicked because I needed to buy groceries for my kids and didn't know what else to do. It was dumb and I shouldn't have done it, but I did it to feed my kids. After I did it, I tried to void it but it didn't work. I didn't tell anyone.

Officer Randy Weber responded to the call. Dobbs told him that she had video surveillance showing Berg activating the cards and a receipt for gas and merchandise Berg purchased with one of the cards. Berg was still at the store when Officer Weber arrived. She admitted to activating a Casey's card worth $75, a Visa card worth $200, and an Amazon card worth $425. Berg also admitted that she did not pay for the cards and that she used the cards to purchase merchandise. A Casey's ticket copy dated July 12, 2022, showed a Casey's card worth $75 and ending in card number 7247 was approved by a cashier named "Sarah." Another ticket copy dated July 13 showed a Casey's gift card ending in card number 7247 was used to purchase grocery items and gas in the amount of $59.67. The July 13 ticket copy showed that Casey's rewards linked to "Sarah Berg" were used and that the gift card had a remaining balance of $15.33, indicating that the previous balance on the Casey's card was $75. Officer Weber arrested Berg.

Berg was charged the next day by criminal complaint with fourth-degree theft in violation of Iowa Code section 714.2(4), which covers thefts between $300 and $750. On August 9, Berg appeared before a magistrate for her initial

appearance. On October 3, she moved to dismiss for violation of her right to speedy indictment pursuant to Iowa Rule of Criminal Procedure 2.33(2)(*a*), arguing that the State failed to obtain a grand jury indictment or file a trial information within forty-five days of her initial appearance. Rather than file a resistance to the motion, the State filed a trial information on October 12, charging Berg with a different crime: unauthorized use of a credit card in violation of Iowa Code section 715A.6(2). The district court held a hearing, denied Berg's motion to dismiss for violation of the speedy-indictment rule in light of the new charge in the trial information, and denied Berg's motion to reconsider.

On January 11, 2023, Berg waived her right to a jury trial and agreed to a trial on the minutes of testimony. The district court found that the State proved beyond a reasonable doubt that Berg committed the criminal act of unauthorized use of a credit card, and Berg was convicted of the offense. On May 17, Berg was sentenced to 120 days in jail (suspended), an $855 fine plus a 15% surcharge (suspended), court costs, one-year informal probation, and restitution (if any).

Berg timely appealed, arguing that (1) the district court erred in denying her motion to dismiss for lack of speedy indictment and (2) the evidence from the trial on the minutes was insufficient to support the conviction. We transferred the appeal to the court of appeals, which affirmed her conviction. We granted Berg's application for further review to address whether fourth-degree theft and unauthorized use of a credit card constitute the "same offense" for speedy-indictment purposes. We conclude they do not. We therefore affirm the district court's denial of Berg's motion to dismiss.

## II.

We agree with the court of appeals' analysis of the sufficiency of the evidence to support Berg's conviction, and we let that opinion stand as the final

decision on that issue. *See Farnsworth v. State*, 982 N.W.2d 128, 135 (Iowa 2022) ("When we grant further review, we may exercise our discretion to let the court of appeals decision stand as the final decision on particular issues." (quoting *State v. Fogg*, 936 N.W.2d 664, 667 n.1 (Iowa 2019))).

### III.

Berg was arrested for fourth-degree theft. The State agrees that it failed to file a trial information charging that offense by the speedy-indictment deadline. Nonetheless, the State urges that unauthorized use of a credit card is not the same offense as fourth-degree theft, so the speedy-indictment rule has nothing to say about the trial information that was subsequently charged. Berg, on the other hand, asserts that fourth-degree theft and unauthorized use of a credit card are sufficiently similar for purposes of speedy indictment that the State was precluded from filing a trial information on the new charge after the forty-five-day period ran. We review Berg's speedy-indictment challenge for correction of errors at law. *State v. Smith*, 957 N.W.2d 669, 675 (Iowa 2021).

Iowa Rule of Criminal Procedure 2.33(2)—our speedy-indictment rule—states that "[i]t is the public policy of the state of Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties." To advance that policy, the rule requires that "[w]hen an adult is arrested for the commission of a public offense . . . and an indictment is not found against the defendant within 45 days, the court must order the prosecution to be dismissed" unless good cause for the delay or waiver is shown. *Id.* r. 2.33(2)(*a*).[2] The speedy-indictment rule helps give effect to the broader

---

[2]For purposes of the speedy-indictment rule, "[t]he term indictment embraces a trial information." *State v. Lies*, 566 N.W.2d 507, 508 (Iowa 1997) (per curiam), *overruled on other grounds by Williams*, 895 N.W.2d 856; *see also* Iowa R. Crim. P. 2.5(5) ("The term 'indictment' embraces the trial information, and all provisions of law applying to prosecutions on indictments

constitutional right to a speedy trial by "address[ing] the time frame in which formal charges must be brought against an accused." *State v. Williams*, 895 N.W.2d 856, 860 (Iowa 2017); *see also* Iowa Const. art. I, § 10 ("In all criminal prosecutions, . . . the accused shall have a right to a speedy and public trial . . . ."). Yet we have also recognized that the rule is intended, as it expressly states, "to ensure a fair trial for *both* parties." *State v. Dennison*, 571 N.W.2d 492, 496–97 (Iowa 1997) (per curiam), *overruled on other grounds by Williams*, 895 N.W.2d 856; *see also* r. 2.33(2) ("It is the public policy of the state of Iowa that criminal prosecutions be concluded at the earliest possible time *consistent with a fair trial to both parties*." (emphasis added)). "[I]t is beneficial for both the State and the defendant for the officer to refrain from making an arrest and issuing a citation for a violation for which the most crucial evidence is not [yet] available." *Dennison*, 571 N.W.2d at 497.

In addressing motions to dismiss on speedy-indictment grounds, we have said that "[t[he failure of the State to comply with rule 2.33(2)(*a*) requires absolute dismissal of the charge and prohibits the State from reindicting [the defendant] on the same offense." *State v. Utter*, 803 N.W.2d 647, 653 (Iowa 2011), *overruled on other grounds by Schmidt v. State*, 909 N.W.2d 778, 784, 790 (Iowa 2018). Thus, whether the State violated Berg's speedy-indictment rights here when it filed a trial information charging her with unauthorized use of a credit card in violation of Iowa Code section 715A.6(2) eighty-three days after her arrest for fourth-degree theft in violation of Iowa Code section 714.2(4) depends on how "same offense" is defined.[3]

---

apply also to informations, except where otherwise provided for by statute or in these rules, or when the context requires otherwise.").

[3]Both parties cite *Williams*, 895 N.W.2d at 867, for the proposition that an arrest is completed when the defendant is taken before the magistrate for her initial appearance, starting the speedy-indictment clock. As we recently clarified in *State v. Harris*, ___ N.W.3d ___, 2024 WL

Focusing specifically on these offenses, Berg asks us to apply an "evidence test" based on the statement from *State v. Abrahamson* that two offenses are the same if they "are in substance the same, or of the same nature, or same species, so that the evidence which proves one would prove the other." 746 N.W.2d at 275 (quoting *Moritz*, 293 N.W.2d at 238–39). In *Abrahamson*, the state dismissed its original charge for conspiracy to manufacture methamphetamine, and it then filed a new two-count trial information charging Abrahamson with manufacturing methamphetamine and conspiracy to manufacture methamphetamine based on the same underlying conduct that supported the original charge. *Id.* at 272. Although the district court granted Abrahamson's motion to dismiss the new conspiracy charge as a violation of his speedy-trial rights, it denied the motion with respect to the new manufacturing count, and he was convicted on that count. *Id.* On appeal, we held that the manufacturing charge should also have been dismissed because it was the same offense for speedy-trial purposes as the original conspiracy charge. *Id.* at 277. We relied on *State v. Williams*, 305 N.W.2d 428, 431 (Iowa 1981), and *State v. Maghee*, 573 N.W.2d 1, 7 (Iowa 1997), to hold that manufacturing methamphetamine and conspiracy to manufacture methamphetamine—both charged under Iowa's drug trafficking statute in Iowa Code section 124.401(1) (2004)—are alternative means of committing the same base offense of drug trafficking for speedy-trial purposes. *Id.* at 275–77; *see also Maghee*, 573 N.W.2d at 7 (holding that a conviction for conspiracy and a conviction for possession of an illegal substance with the intent to deliver were alternative means of violating Iowa Code section 124.401(1) (1993)

---

4395277 (Iowa Oct. 4, 2024), under the pre-amendment rule, which applied to Berg's arrest, the clock started on the date of her arrest, not the date of her initial appearance. *Id.* at ___, 2024 WL 4395277, at *4. The distinction doesn't make a difference in Berg's case, where the State failed to file a trial information within forty-five days of either event.

that had to merge for sentencing purposes); *Williams*, 305 N.W.2d at 431 (holding that adding a conspiracy to manufacture count to an indictment charging manufacturing with the intent to distribute merely charged "[an alternative] means of committing the same offense" of drug trafficking for purposes of amending a trial information before trial under the predecessor of Iowa Rule of Criminal Procedure 2.4(6)(*c*)).

In *Abrahamson*, we rejected the state's contention that manufacturing and conspiracy should be considered the same offense when the state seeks to amend an information pursuant to rule 2.4(8)(*a*) (now found at rule 2.4(6)(*c*)) but be considered different offenses when a defendant seeks to enforce their speedy-trial rights under rule 2.33. 746 N.W.2d at 276. In reaching this conclusion, we discussed *State v. Moritz*, 293 N.W.2d at 238–40, where we had similarly addressed "whether charges were the 'same offense' for speedy trial purposes." 746 N.W.2d at 274. After recognizing that "[o]ur decision in *Moritz* noted the 'same offense' test applied in the speedy trial context focuses on whether the 'two offenses are in substance the same, or of the same nature, or same species, so that the evidence which proves one would prove the other,' " we then concluded that "[t]he *Moritz* analysis [was] neither controlling nor instructive in" *Abrahamson. Id.* at 275 (quoting *Moritz*, 293 N.W.2d at 238–39). Moritz had not argued that "the two charges (accepting an award for public duty, and engaging in a conspiracy to do so) based on statutes in different code chapters were alternative means of committing the same offense," so we had no occasion in *Moritz* to consider the issue. *Id.* We further noted that "[i]n sharp contrast" to the situation in *Moritz*, Abrahamson was charged with two offenses arising from a common set of facts "under a single statute." *Id.*

The critical point that made manufacturing and conspiracy the same offense in *Abrahamson* was that they were alternative means for violating a single drug trafficking statute. *Id.* at 277 ("Abrahamson was charged with alternative means of violating section 124.401(1): manufacturing methamphetamine and conspiracy to manufacture the same substance."). Notably, we distinguished *State v. Lies*, 566 N.W.2d 507, 508 (Iowa 1997) (per curiam), *overruled on other grounds by Williams*, 895 N.W.2d 856, where we had concluded that burglary under Iowa Code section 706.1 (1995) and conspiracy to commit burglary under section 706.4 were not the same offense for speedy-indictment purposes because "Iowa Code section 706.4 expressly provides '[a] conspiracy to commit a public offense is an offense separate and distinct from any public offense which might be committed pursuant to such conspiracy.' " *Abrahamson*, 746 N.W.2d at 276 (alteration in original) (quoting Iowa Code § 706.4 (1995)). Thus, we reaffirmed the importance of how an offense is defined by statute in determining whether charges allege the same offense for speedy-trial or speedy-indictment purposes. We have since characterized *Abrahamson* as "applying a different test where the two charges were not based on different statutes but, instead, constituted two alternative ways of committing the same offense under a single statute." *Utter*, 803 N.W.2d at 654.

As noted, the language Berg relies on from *Abrahamson* came from *Moritz. See Moritz*, 293 N.W.2d at 239. In *Moritz*, the state charged the defendant, a Scott County deputy sheriff, with accepting an award for public duty in violation of Iowa Code section 739.10 (1977) and conspiracy to commit that offense in violation of section 719.1. *Id.* at 237. The original trial information identified specific conduct on January 7, 1977, as the overt act for the section 739.10 violation. *Id.* The state dismissed the original information and filed a new trial

information, again charging Moritz with violating section 739.10 and conspiracy to commit that offense in violation of section 719.1 but this time identifying conduct on April 5 as the overt act for purposes of the section 739.10 offense. *Id.* Because the second trial information alleged conduct from a different day to support the section 739.10 offense, we held that there was no speedy-trial problem. *Id.* at 239. "[B]oth charges could not be sustained on the same evidence and each one constituted a separate offense." *Id.*

We conclude that this case is analogous to *Moritz* because each charge relied on different underlying events, so there is no speedy-indictment problem. *See id.* (concluding that the two charges under the same statutory provision "could not be sustained on the same evidence" where each was based on actions taken on different dates); *cf. State v. Stewart*, 223 N.W.2d 250, 252 (en banc) (Iowa 1974) ("It is only after the elements of the lesser crime are shown to be necessarily included in the greater crime that a second inquiry is made. The second inquiry is a factual one, undertaken on a case by case basis. It is not involved in this case because we determine the first test is not met."). The criminal complaint charged that Berg "commit[ted] theft in the fourth degree by taking propert[y], gift cards belonging to Casey's, said property having a value exceeding $300 but not exceeding $750." To sustain the fourth-degree theft charge, the State would have been required to prove that Berg "[took] possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof," Iowa Code § 714.1(1) (2022), and that the property was valued between $300 and $750, *id.* § 714.2(4). The State supported that charge with evidence that Berg activated three gift cards she took from Casey's without paying for them on July 12, 2022: a Casey's card worth $75, a Visa card worth $200, and an Amazon card worth $425, totaling $700.

Unauthorized use of a credit card, on the other hand, required the State to prove that Berg "us[ed] a credit card for the purpose of obtaining property or services with knowledge" of one of three circumstances: that the credit card (1) "is stolen or forged," (2) "has been revoked or canceled," or (3) "is [otherwise] unauthorized." *Id.* § 715A.6(1)(*a*). The trial information charged that Berg "use[d] a credit card to obtain property or services, valued not in excess of $1,500, knowing that the credit card was stolen, forged, revoked, cancelled or otherwise used without authorization." To support that charge, the State relied on the Casey's ticket copies revealing that Berg used the Casey's gift card the following day to purchase gas and food in the amount of $59.67. Even if the State needed to rely on Berg's actions of activating the Casey's card without paying for it to prove the knowledge element of the unauthorized use charge, *see id.*, that charge could not be sustained without the evidence that Berg then used the card the next day to obtain property. The two charges relied on distinct underlying facts supporting the distinct charges. *See Moritz*, 293 N.W.2d at 239; *see also Clark v. State*, 981 A.2d 710, 724 (Md. Ct. Spec. App. 2009) (holding that a defendant who stole a doctor's wallet out of a hospital locker room and then used a credit card from the wallet to purchase a PlayStation game system at a nearby Toys "R" Us committed separate offenses supporting distinct charges for theft when he took the credit card and assuming another's identity when he then used it).

Further, considering the facts needed to prove each offense, Berg's actions of using the Casey's card to purchase gas and food on July 13 could not have supported the fourth-degree theft charge because that charge required a minimum theft of $300, *see* Iowa Code § 714.2(4), but she obtained only $59.67 worth of goods. And her activation of the gift cards on July 12 could not support unauthorized use of a credit card because she did not "use" any of the gift cards

for the purpose of obtaining property, as required to prove a violation of Iowa Code section 715A.6(1)(*a*). Thus, the fourth-degree theft charge required a fact not required for unauthorized use of a credit card: taking possession of over $300 worth of property. Likewise, the unauthorized use of a credit card charge required a fact not required for fourth-degree theft: using one of the stolen gift cards to obtain property.

The charges were not the same public offense for purposes of rule 2.33(2). The State was therefore not precluded from filing a trial information charging Berg with committing unauthorized use of a credit card.

IV.

Berg's conviction is affirmed.

**Decision of Court of Appeals and District Court Judgment Affirmed.**