CADY, Chief Justice.
In this case, we consider whether the speedy indictment rule requires the dis *858 missal of a trial information against a defendant filed more than forty-five days after the defendant was taken into. custody, interrogated, and released without the filing of a criminal complaint. The district court held the rule did not require the charges to be dismissed. The court of appeals, relying on case precedent, reversed the district court. On further review, we vacate the court of appeals and affirm the district court. We conclude the speedy indictment rule is properly interpreted to commence upon arrest only when the arrest is completed by making an initial appearance.
I. Factual Background and Proceedings.
This case comes before us on further review. The court of appeals, on discretionary review of the district court’s denial of the defendant’s motion to dismiss, reversed the district court and dismissed the charges against Deantay Williams, Taevon Washington, and Cordarrel Smith. On this further review, we focus solely on whether the defendants’ rights were violated by the failure to bring formal charges against these defendants within forty-five days of their arrest. This case is submitted and decided together with State v. Washington, No. 14-0792, 2017 WL 2290095, at *1 (Iowa May 25, 2017), and State v. Smith, No. 14-0812, 2017 WL 2291377, at *1 (Iowa May 25, 2017), which arise out of the same facts.
At approximately 5:30 a.m. on June 10, 2012, the Waterloo Police Department responded to a call reporting a sexual assault. Officers met with L.M., a minor. L.M. told the officers she had been repeatedly sexually assaulted at a nearby house. L.M. told the officers her friend, J.K., also a minor, was assaulted and was likely still inside the house. Officers went to the house and set up surveillance. They considered the house a “gang hang out,” possibly with weapons inside. An officer took L.M. to a hospital for examination.
At approximately 7:15 a.m., Deantay Williams, age seventeen, exited the house. An officer stopped Williams, placed handcuffs on him, and conducted a pat-down search. The officer found a marijuana pipe in a pocket. The officer told Williams he was being detained, placed him in the back of a squad car, and drove him back to the house.
A short time later, numerous officers entered the front door of the house with weapons drawn. They found seven occupants in the living room and bedrooms, including Taevon Washington and Cordar-rel Smith, as well as two other males and three females. Officers also entered the basement and found J.K. sitting on a mattress, crying. An officer promptly took her to a hospital. The police took the other occupants of the house into custody and transported them to the Waterloo police station.
Williams, Washington, and Smith were separated, read their Miranda rights, and questioned by officers. Williams and Washington admitted they had sexual intercourse with L.M. and J.K., but stated it was consensual. Smith denied any sexual contact with L.M. or J.K. A fourth male admitted to sexual contact with J.K., confirmed Washington and Williams had sexual contact with J.K., and confirmed Williams had sexual contact with L.M. Police asked each male to consent to buccal and penile swabs. Williams and Smith consented. Washington refused, and police obtained a search warrant to perform the swabs. The police then released each person from custody. L.M. and J.K. were discharged from the hospital later that day after being examined and completing sexual assault testing. No criminal complaints were filed.
*859 On October 21, 2013, police obtained arrest warrants for Williams, Washington, Smith, and the fourth male and charged them with sexual abuse in the second degree. Police arrested Smith and the fourth male on October 24, Williams on October 28, and Washington on October 29. After each person was taken into custody, they were taken before a magistrate to make an initial appearance.
On November 1, 2013, now 510 days after the initial events, a Black Hawk County attorney filed a trial information accusing Williams, Washington, Smith, and the fourth male with sexual abuse in the second degree under Iowa Code section 709.3(3) (2011).[1] The fourth male pled guilty. Williams, Washington, and Smith filed a motion to dismiss for violation of their speedy indictment rights. The district court held a hearing and denied the motions. The district court drew a distinction between an arrest under the Fourth and Fourteenth Amendments and an. arrest under our speedy indictment rule. Williams, Washington, and Smith filed for discretionary review. In the meantime, the State filed amended charges against Williams, Washington, and Smith. We granted the requests for discretionary review, stayed the proceedings before the district court, and transferred the cases to the court of appeals. Williams moved to dismiss the amended charges. This motion was denied, and he applied for discretionary review. We granted the application and consolidated his appeals. The court of appeals reversed the district court decisions, found Williams’s rights were violated under the speedy indictment rule, and remanded the case for dismissal of the November 1, 2013 trial information and the amended charges. The court of appeals relied on case precedent interpreting the speedy indictment rule to find the time to file an indictment commenced on June 10, 2012, when Williams reasonably believed he had been arrested. We granted further review.
II. Stare Decisis.
We begin by considering our devotion to stare decisis. We do so because our existing caselaw can be applied to quickly resolve this case. See State v. Wing, 791 N.W.2d 243, 249 (Iowa 2010). Yet, this caselaw is being challenged as incorrect. Accordingly, we must consider the claim. See State v. Johnson, 257 Iowa 1052, 1056, 135 N.W.2d 518, 521 (1965) (“[H]igh courts have not only the right but the duty to change a past decision if it is erroneous....”), We adhere to our past cases as precedence, but we overturn the precedent if found to be clearly erroneous. See McElroy v. State, 703 N.W.2d 385, 394-95 (Iowa 2005). We identified the reasons for this hesitance sixty years ago, stating, “Legal authority must be respected; not because it is venerable with age, but because it is important that courts, and lawyers and their clients, may know what the law is and order their affairs accordingly.” Stuart v. Pilgrim, 247 Iowa 709, 714, 74 N.W.2d 212, 216 (1956). However, “[s]tare decisis ‘should not be invoked to maintain a clearly erroneous result.’ ” State v. Liddell, 672 N.W.2d 805, 813 (Iowa 2003) (quoting Miller v. Westfield Ins., 606 N.W.2d 301, 306 (Iowa 2000)). The State asserts dismissal of the . charges here is such a result, arguing that our line of eases interpreting the speedy indictment rule is inconsistent with legislative intent.[2] Thus, *860 we proceed to consider if compelling reasons exist to overturn our prior interpretation.
III. Standard of Review.
We review interpretations of the speedy indictment rule for errors at law. See State v. Penn-Kennedy, 862 N.W.2d 384, 386 (Iowa 2015). “We are bound by the findings of fact of the district court if they are supported by substantial evidence.” Id. (quoting Wing, 791 N.W.2d at 246).
IV. Analysis.
This case follows a growing line of cases beginning in 1980 that has addressed the dismissal of criminal charges after an arrest for failing to comply with Iowa’s speedy indictment rule. See, e.g., id. at 389-91; Wing, 791 N.W.2d at 248-51; State v. Dennison, 571 N.W.2d 492, 494-95 (Iowa 1997); State v. Schmitt, 290 N.W.2d 24, 26-27 (Iowa 1980). This rule has its roots in the more comprehensive right to speedy trial guaranteed under the United States and Iowa Constitutions. U.S. Const. amend. VI; Iowa Const. art. I, § 10; see State v. Gebhart, 257 Iowa 843, 847, 134 N.W.2d 906, 908 (1965), overruled on other grounds by State v. Johnson, 217 N.W.2d 609, 612 (Iowa 1974), and State v. Gorham, 206 N.W.2d 908, 913 (Iowa 1973). It has been part of the criminal procedure of this state since 1851. See Iowa Code § 3248 (1851). As a part of the broader right to a speedy trial in all criminal cases, the rule specifically addresses the time frame in which formal charges must be brought against an accused and requires the case be dismissed for noncompliance. See Iowa R. Crim. P. 2.33(2)(a).
From 1851 to 1978, the statutory window of time to file an indictment under Iowa law commenced from the time the defendant was “held to answer.” See Iowa Code § 3248 (1851); id. § 795.1 (1975). The rule provided, “When a person is held to answer for a public offense, if an indictment be not found against him within thirty days, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown.” Id. § 795.1 (1975).
The caselaw that inevitably develops around any rule or statute declared “held to answer” was a separate event from an “arrest.” See State v. Mays, 204 N.W.2d 862, 866-67 (Iowa 1973). We consistently determined the legislature intended the phrase “held to answer” to refer to that stage in the court process following an arrest when a magistrate makes a determination that there is probable cause the offense was committed and the accused committed the offense, or the time the defendant elected to waive this preliminary hearing. See id. In other words, the speedy indictment time period was tied to the fundamental probable-cause determination required under our law for the state to prosecute a person arrested and accused of a crime. See State v. Morningstar, 207 N.W.2d 772, 774 (Iowa 1973) (“After preliminary examination showing sufficient reason to commit the accused, or on waiver by the accused, the magistrate orders that the accused be ‘held to answer.’ ” (quoting Iowa Code § 761.18 (1973))). Without probable cause, no criminal prosecution in Iowa can take place. See Iowa R. Crim. P. 2.2(4)(e). Instead, the court must dismiss the complaint. Id. Without probable cause, *861 the defendant is discharged and is no longer “held to answer.”
Accordingly, the speedy trial rule in Iowa operated in two stages. If an indictment was not found against the defendant within thirty days after the defendant was “held to answer,” the prosecution was required to be dismissed, absent good cause to the contrary or waiver. Iowa Code § 795.1 (1975). The speedy trial rule next required that trial be held sixty days after indictment, absent good cause. Id. § 795.2. Together, the rules implemented the constitutional speedy trial protection by defining the inherent “indefiniteness in the meaning of the term.” Pines v. Dist. Ct., 233 Iowa 1284, 1290-91, 10 N.W.2d 574, 578 (1943), overruled on other grounds by Gorham, 206 N.W.2d at 913; see also State v. Satterfield, 257 Iowa 1193, 1195-96, 136 N.W.2d 257, 258 (1965) (noting the rules “represent protection for one who is charged by a preliminary information, that he must be indicted promptly; and for one who is indicted, that he be given a speedy trial”). Over time, the rules were modified to extend the time frames, and an additional rule was enacted to require the case be dismissed if not tried within one year after the original arraignment, absent good cause. See Iowa R. Crim. P. 2.33(2)(a)-(c).
Two additional events occurred that substantially shaped the speedy trial landscape. First, the preliminary examination process to determine the existence of probable cause in a criminal proceeding began to fall into relative obscurity. See Charles A. Pulaski, Preliminary Examinations in Iowa: The Constitutional Considerations, 60 Iowa L. Rev. 462, 469-70 (1975) (“[T]he short term benefits to be derived from bypassing the preliminary examination have prompted a majority of Iowa county attorneys to employ the true information procedure in most cases.... [M]ost contemporary trial courts appear to welcome the efficiency....”). If a defendant did not waive the preliminary hearing, the prosecutors would routinely file a trial information to avoid the necessity of the hearing. See id.; see also State v. Clark, 258 Iowa 254, 257, 138 N.W.2d 120, 122 (1965) (“As to the complaint that no preliminary hearing was provided, none was necessary. A county attorney’s information had been filed.... The procedure does not contemplate a preliminary hearing”). The endorsement by a judge on the trial information established a finding of probable cause, obviating the need for a hearing. See State v. Shank, 296 N.W.2d 791, 792 (Iowa 1980). Thus, while the preliminary examination process still existed as part of the criminal process, it was rarely used.
By the early 1970s, a second event emerged in Iowa to impact the development of the speedy indictment rule. By this time, pretrial delay in criminal cases had been identified as a growing problem across the nation, and states were beginning to respond with various reform measures. See Anthony Partridge, Legislative History of Title I of the Speedy Trial Act of 1974 11 (1980) .(identifying twin goals of the Speedy Trial Act: “clarifying the rights of defendants” and “protecting society’s interest in bringing criminals to justice promptly”); Standards Relating to Speedy Trial 1 (Am. Bar Ass’n Tentative Draft 1967) (“Congestion in the trial courts of this country ... is currently one of the major problems of judicial administration”), This concern reached Iowa and was in part responsible for a comprehensive review and major overhaul of the Iowa Criminal Code in 1976. Part of the overhaul included the speedy indictment rule. Effective in 1978, the legislature changed the triggering language of the rule from “held to answer” to “arrest.” See 1976 Iowa Acts ch. 1245, ch. 2, § 1301 (rule 27(2)(a)) (now codified as amended at Iowa *862 R. Crim. P. 2.33(2)(a)). The amended provision provided,
When a person is arrested for the commission of a public offense and an indictment is not found against him or her within forty-five days, the court must order the prosecution to-be, dismissed, unless good, cause to the contrary is shown or the defendant waives his or her right thereto.
Iowa Code § 813.2 (rule 27(2)(a)) (Supp. 1977). At the time, the principal authors behind the Code -revisions wrote that the speedy trial revisions did not express substantive changes, but resulted in “an approach not dissimilar from [the former rules].” See 4 John L. Yeager & Ronald L. Carlson, Iowa Practice: Criminal Law and Procedure § 1242, at 298-99 (1979).
Our first opportunity to interpret the revised speedy indictment rule came in 1980. Without mentioning the view of the principal authors, we took a different position.
In Schmitt, the defendant escaped from a county jail where he was awaiting trial on the charges of burglary and possession of burglary tools, 290 N.W.2d at 25. He was captured a few hours later by police officers. Id. at 26. An officer handcuffed him at the scene of the capture, placed him in a squad car, and returned him to the jail facility. Id. He was not separately booked and processed on a charge of escape and was not brought before a magistrate on any charge. Id. Instead, he was simply returned to his cell to continue to await trial on the burglary and possession of burglary tools charges. Id.
More than forty-five days after the escape and capture, the county attorney filed a trial information charging the defendant with escape. Id. at 25-26. The defendant subsequently moved to dismiss the charge under the speedy indictment rule on the grounds that it was filed more than forty-five days after he had been arrested for that charge. Id. The defendant claimed he was arrested when captured, and this event triggered the new speedy indictment rule. Id.
We rejected the State’s argument that no “arrest[ ] for the commission of a public offense” occurs under the new speedy indictment rule when no criminal complaint alleging the commission of a public offense is filed against the arrested person and the person is not brought within the court process designed to adjudicate the complaint. Id. at 26-27. Instead, we held the statutory change in the speedy indictment rule revealed a legislative intent to expand the former speedy indictment rule by using the moment a person is taken into custody as the only triggering event, even if the arrested person is not subsequently brought into the court process to answer to a criminal charge pursuant to the rules of criminal procedure. Id. at 27. We reached this conclusion by relying on the statutory definition of “arrest” under Iowa Code section 804.5 (Supp. 1977), and the statutory requirements that follow an arrest under Iowa Code section 804.14, Id. at 26-27. Under section 804.5, an arrest means taking a person into custody “when and in the manner authorized by law.” Iowa Code § 804.5. Section 804.14 normally requires the person making the arrest to inform the person of the intent to arrest, the reason for the arrest, and the identity of the person making the arrest as a police officer. Id. § 804.14. We found the phrase “in the manner authorized by law” within the definition of an arrest under section 804.5 only referred to the manner or. requirements of making an arrest within section 804.14. Schmitt, 290 N.W.2d at 26. We implicitly rejected the notion that taking a person into custody in the manner authorized by law included the other statutory provisions governing an arrest, such *863 as the requirement for the arresting officer to take the person before a magistrate. Id. at 26; see also Iowa Code §§ 804.21, 22 (Supp. 1977). Instead, we stated that “the lack of follow-up of booking or charges does not eradicate the event or nullify it as an arrest.” Schmitt, 290 N.W.2d at 26.
The speedy indictment cases that followed Schmitt have dealt with the impact of various collateral circumstances that can accompany an arrest. See, e.g., Wing, 791 N.W.2d at 262-53 (applying rule to a brief arrest at the scene of an automobile stop followed by release of custody with a plan that the person would become a confidential informant). With inconsistent results, these cases have also dealt with circumstances to support an arrest, including circumstances like those in this case in' which a person is taken into custody, interrogated, and released from custody without the filing of a criminal complaint. See State v. Rains, 574 N.W.2d 904, 910-11 (Iowa 1998) (holding arrest does not occur under the speedy indictment rule when the suspect is shot by a police officer, detained at the scene, and guarded at a hospital); Dennison, 571 N.W.2d at 496-97 (holding arrest does not occur under the speedy indictment rule when police have authority to detain a person by transporting the person to the police station to invoke the implied-consent procedures); State v. Gathercole, 553 N.W.2d 569, 571-74 (Iowa 1996) (holding an arrest does occur under the speedy indictment rule when a defendant who waived extradition was served with an arrest warrant after being returned to Iowa, but not when taken into custody in the other state by an extradition agent); State v. Davis, 525 N.W.2d 837, 840-41 (Iowa 1994) (holding the speedy indictment rule applies to defendants who are arrested and released to allow police to conduct the investigation); State v. Van Beek, 443 N.W.2d 704, 706-07 (Iowa 1989) (holding that the unconditional release of drug offense suspects after an arrest did not violate speedy indictment rule), overruled by Davis, 525 N.W.2d at 839; State v. Lasage, 523 N.W.2d 617, 620 (Iowa Ct. App.1994) (holding that the unconditional release of a murder suspect did not violate speedy indictment rule). These cases have also excluded from the speedy indictment rule any new charges brought more than forty-five days after an arrest for a different offense, even though the new charges arose from the same incident. See Penn-Kennedy, 862 N.W.2d at 389; State v. Lies, 566 N.W.2d 507, 509 (Iowa 1997); State v. Sunclades, 305 N.W.2d 491, 494 (Iowa 1981).
At times, we did rely on the statutory manner of making an arrest under section 804.14 to determine if the speedy indictment rule was triggered. See Dennison, 571 N.W.2d at 495; Gathercole, 553 N.W.2d at 572; Davis, 525 N.W.2d at 839. Each time, however, we failed to further identify the other statutory requirements essential to completing the manner of arrest.
Overall, our approach to the application of the speedy trial rule since Schmitt has been nuanced and subject to criticism. See 4A B. John Burns, Iowa Practice SeriesTM;Criminal Procedure § 7:3, at 84-91 (2016). Moreover, Iowa stands as the only jurisdiction in the country to interpret its speedy indictment rule to rely solely on the moment of arrest to trigger the rule.[3] *864 Additionally, it has created an inconsistency in the rule so that adult offenders have the benefit of the “arrest” rule, while juvenile offenders must await transfer to adult court before they may assert speedy indictment protections, regardless of how long prior they were subjected to an arrest. See State v. Harriman, 513 N.W.2d 725, 726 (Iowa 1994); Bergman v. Nelson, 241 N.W.2d 14, 15 (1976); State v. White, 223 N.W.2d 173, 176 (Iowa 1974).
In Wing, we rejected the suggestion to change course and align the meaning of “arrest” under our speedy indictment rule with the federal speedy indictment rule. 791 N.W.2d at 249. “Arrest” under the federal speedy indictment rule means the time when the defendant is first charged and held to answer for a charge. See United States v. Sayers, 698 F.2d 1128, 1130-31 (11th Cir. 1983); see also Speedy Trial, 45 Geo. L.J. Ann. Rev. Crim. Proc. 449, 458 & n.1284 (2016) (noting the federal time limit “does not begin when a defendant is arrested and released without being charged” and compiling cases). We continued to apply a fact-based analysis to trigger the speedy indictment rule by focusing on the circumstances surrounding custody. We even took a step further away from considering the comprehensive statutory manner of an arrest by defining an arrest for the purposes of the speedy indictment rule as of the time when seized under constitutional law. Wing, 791 N.W.2d at 248.
*865 We have never looked back to confront the obvious shortcoming in our analysis used in deciding to take the path followed in Schmitt. In interpreting the speedy indictment rule in Schmitt, we properly relied on the statutory definition of an “arrest.” See Schmitt, 290 N.W.2d at 26. We also properly considered the statutory requirements under Iowa Code section 804.14 that normally must occur as a part of an arrest. See id. This requirement directs the person making the arrest to inform the person being arrested of the intention to arrest, the reason for the arrest, the identity of the person making the arrest as a peace officer, and the requirement for the person to submit to custody. See Iowa Code § 804.14. If the arrest is by warrant, the person making the arrest may also be required to show the person the warrant. See id. These procedures describe the “manner authorized by law” in taking a person into custody. See id. §§ 804.5, .14.
The shortcoming of the important first step we took in Schmitt was the failure to identify and account for the other statutory directives applicable to taking a person into custody “in the manner authorized by law.” Id. § 804.5. The critical point is that the manner of making an arrest under Iowa law does not end with the on-the-scene requirements identified in section 804.14. Importantly, the process of arrest requires that the person arrested must also be taken from the scene to the nearest or most accessible magistrate without unnecessary delay. Id. §§ 804.21, .22. This procedure is a vital part of the arrest because it gives the arrested person the most protection. See State v. Lee, 222 N.W.2d 471, 473-74 (Iowa 1974). Once the arrested person is before the magistrate, the arrest process is complete, the person is no longer under the control of the arresting officer, and all the rights under the law available to defendants become applicable, including the right to a probable-cause preliminary hearing and the right to a speedy indictment. See Iowa R. Crim. P. 2.2(1)—(4).
Accordingly, if a person is taken into custody “in the manner authorized by law,” the person will be taken before a magistrate, see id. r. 2.2(1), entitled to a preliminary hearing within ten days, see id. r. 2.2(4)(a), and entitled to be discharged if the magistrate finds no probable cause that a crime was committed or that the defendant did not commit the crime, see id. r. 2.2(4)(e). Thus, while the time for bringing the indictment runs from the initial arrest, the necessity for a speedy indictment following an arrest is derived only from a finding of probable cause or the defendant’s waiver of a probable-cause hearing. A speedy indictment is only needed when a defendant is arrested and subsequently held to answer by the magistrate following the arrest.
It is understandable that we failed in Schmitt to consider the complete manner of making an arrest. Unlike an arrest in most situations, the defendant in Schmitt had been in custody prior to his arrest, and it was logical for the arresting officers to return him to jail instead of taking him before a magistrate. See Schmitt, 290 N.W.2d at 25-6. Based on that perspective, we concluded “the actions taken” by the arresting officer and the “result[s] achieved fulfill[ed] the statutory criteria of an arrest.” Id. at 26. Clearly, the statutory objectives of an arrest for a criminal offense were not accomplished because the law also required the arresting officer to bring the person before a magistrate. See Iowa Code § 813.2 (1979) (Iowa R. Crim. P. 2(1)).
In the cases leading up to the 1976 revisions, defendants were not only arrested, they were also charged by preliminary *866 information, appeared before a magistrate, held in continuous custody, released on bail, or subjected to some combination of these normal incidents of prosecution. See State v. Thomas, 222 N.W.2d 488, 490 (Iowa 1974); Lee, 222 N.W.2d at 472; Morningstar, 207 N.W.2d at 773; Mays, 204 N.W.2d at 865. If the legislature was responding to these holdings in 1976, there is no evidence they intended the rule protect defendants not charged, held in continuous custody, or otherwise prosecuted. “Normally, the date of an arrest and the date of prosecution follow hand in hand,” but they can “become detached.” Penn-Kennedy, 862 N.W.2d at 387, 388. If they become detached, the operation of the rule becomes detached from its purpose and remedy. There is no prosecution to dismiss, no defendant to release, and no bail money to return. See Iowa R. Crim. P. 2.33(2)(d). Instead, it operates only to accelerate the statute of limitations. See Penn-Kennedy, 862 N.W.2d at 389-90. Just like the arresting officers in Schmitt, we failed to consider all the required actions of an arrest as a part of “the statutory criteria of an arrest.” Schmitt, 290 N.W.2d at 26. Had we not confined our analysis to the specific facts of the case, we would have considered the full statutory requirements of an arrest, and we would have seen that the defendant in Schmitt was indeed arrested, but not in the manner authorized by law.
The failure to account for the entire process of an arrest in Schmitt significantly undermines our confidence in the interpretation of the speedy indictment rule. This shortcoming alone causes us to acknowledge our mistake and directs us to correct it. The need to correct our mistake is also revealed by the inconsistent outcomes we have reached over the years and the inconsistent application of the speedy indictment rule that fails to give the same relief to juvenile offenders as it does to adult offenders and encourages the use of “placeholder” charges during the pendency of an investigation. For example, the State argues Williams was not entitled to speedy indictment protection because he was a minor. Under the State’s interpretation, Washington and Smith, both adults, would go free while Williams would not. See Harriman, 513 N.W.2d at 726. Alternatively, Williams was found with a marijuana pipe, a simple misdemeanor. See Iowa Code § 124.414(1)(a)(2), (2). If the police would have charged Williams with this offense that would mean, under our precedent, that Williams was arrested for that offense only, and charges for sexual assault could come at any time within the statute of limitations. See Penn-Kennedy, 862 N.W.2d at 390. Washington and Smith, found with no contraband, would obtain the benefit of the speedy indictment rule while Williams would not. This is all regardless of the presence or absence of probable cause at any point in the investigation.
The speedy indictment rule gives effect to the constitutional guarantee of speedy trial. See Wing, 791 N.W.2d at 246; see also Iowa Const. art. I, § 10.
The purpose of these protections, both constitutional and statutory, is to relieve one accused of a crime of the hardship of indefinite incarceration awaiting trial or the anxiety of suspended prosecution, if at liberty on bail, and to require courts and peace officers to proceed with the trial of criminal charges with such reasonable promptness as proper administration of justice demands.
State v. Allnutt, 261 Iowa 897, 901, 156 N.W.2d 266, 268 (1968), overruled on other grounds in Gorham, 206 N.W.2d at 913; see also Penn-Kennedy, 862 N.W.2d at 387 (“As with all three segments of the speedy trial rule, the speedy indictment rule *867 serves to ‘relieve an accused of the anxiety associated with’ the suspension of a prosecution, provide for the ‘reasonably prompt administration of justice,’ prevent the loss of evidence, and maintain a fair process.” (quoting Wing, 791 N.W.2d at 246-47)). Here, the defendants did not need relief from “the hardship of indefinite incarceration,” or even “the anxiety of suspended prosecution.” Allnutt, 261 Iowa at 901, 166 N.W.2d at 268. After the arrest, the police did not file a complaint. The defendants did not appear before a magistrate for arraignment or undergo a preliminary hearing. There is no argument of unreasonable delay or loss of evidence. Dismissing the charges against these defendants does not reflect the aim and purpose of the constitutional right to a speedy trial.
In the end, we cannot always rely on our venerable doctrine of stare decisis, or legislative acquiescence, to direct the outcome of cases. McElroy, 703 N.W.2d at 395 (“[W]e must remember that legislation sometimes persists on account of ‘inattention and default rather than by any conscious and collective decision.’” (quoting Ronald Dworkin, Law’s Empire 319 (1986))). The course we must follow is not to ignore our mistakes, but to correct them. See Stuart, 247 Iowa at 714, 74 N.W.2d at 216 (overruling precedent when “more mischief will be done” by adherence than overruling). Thus, we do not take a different course from the past out of dislike for the course taken, but to correct an incorrect analysis that sent us down the wrong path. This correction will realign the speedy indictment rule so that it will be applied in all cases as intended by our legislature and serve the purposes of the rule.
Y. Conclusion.
Arrest for the purposes of the speedy indictment rule requires the person to be taken into custody in the manner authorized by law. The manner of arrest includes taking the arrested person to a magistrate. The rule is triggered from the time a person is taken- into. custody, but only when the arrest is completed by taking the person before a magistrate for an initial appearance. For these reasons, we vacate the court of appeals decision and affirm the judgment of the district court. Because we decide these eases on these grounds, we need not address the additional arguments raised by the parties and amicus.
DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AND CASE REMANDED FOR FURTHER PROCEEDINGS.
Waterman, Mansfield, and Zager, JJ., join this opinion. Mansfield, J., files a specially concurring opinion in which Waterman and Zager, JJ., join. Wiggins, J., files a dissenting opinion. Hecht, J., files a separate dissenting opinion in which Appel and Wiggins, JJ., join.

. Except where otherwise noted, references to the Iowa Code are to the 2011 edition.

. Williams responds first that the State failed to preserve error on this issue. This argument fails, as it would make little sense to require a party to argue existing law should be overturned before a court without the authority to do so. See State v. Eichler, 248 Iowa 1267, 1270, 83 N.W.2d 576, 578 (1957) (“[I]t is the *860 prerogative of this court to determine the law, and we think that generally the trial courts are under a duty to follow it as expressed by the courts of last resort.... ”); see also Kersten Co. v. Dep’t of Soc. Servs., 207 N.W.2d 117, 121 (Iowa 1973) ("If trial courts venture into the business of predicting when this court will reverse its previous holdings ... they are engaged in a high-risk adventure which we strongly recommend against.").

. First, not all jurisdictions provide a statutory right to speedy indictment. See, e.g., State v. Hughes, 135 N.H. 413, 605 A.2d 1062, 1066-67 (1992) (abandoning court-imposed "sixty-day rule” for speedy indictment and adopting balancing approach in the absence of statutory mandate). Where there are speedy indictment statutes, a number of jurisdictions measure the time, as we used to, from the defendant’s preliminary hearing or a waiver thereof. See Cal. Penal Code § 1382 (West, Westlaw current with urgency legis. *864 through ch. 9 of 2017 Reg. Sess,); Md. R. Crim. P. § 4-102 (West, Westlaw current through legis. effective May 4, 2017); Mont. Code Ann. § 46-11-203(1) (West, Westlaw current with amendments received through Sept. 1, 2016); Nev. Rev. Stat. Ann. § 173.035(3) (West, Westlaw current through the 79th Reg. Sess. (2017)); N.M. R. Crim. P. 5-201(C) (West, Westlaw current with amendments received through Feb. 1, 2017); Wis. Stat. Ann. § 971.01(2) (West, Westlaw current through 2017 Act 6, published April 25, 2017). One jurisdiction measures the time from the defendant’s initial appearance before a magistrate. See Me. R.U. Crim, P. 48(b)(2) (West, Westlaw current with amendments received through March 1, 2017). A large number focus not on speedy trial, but excessive pretrial incarceration, and require discharge on a failure to bring the indictment. See Mich. Comp. Laws Ann. § 767.26 (West, Westlaw current through P.A. 2017, No. 33 of the 2017 Reg. Sess.); Neb. Rev. Stat. Ann. § 29-1201 (West, Westlaw current through legislation effective March 30, 2017); N.C. Gen. Stat. Ann. § 15-10 (West, Westlaw current 2016 Reg. Sess., S.L. 2016-126 from the 2016 4th Extra Sess. and S.L. 2017-5, 2017-8, and 2017-9 of the 2017 Reg. Sess.); Texas Code Crim. Proc, Ann. art. 32.01(a) (West, Westlaw current through 2015 Reg. Sess.); Va. Code Ann. § 19.2-242 (West, Westlaw current through the end of 2016 Reg. Sess. and 2017 Reg. Sess. cc, 1 to 3, 32, 62, 82, 147, 156, 180, 181, 197, 287 & 314); Wash. Super. Ct. Crim. R. 3.2.1(f)(1) (West, Westlaw current with amendments through March 15, 2017); W. Va. Code Ann. § 62-2-12 (West, Westlaw current with legislation through March 14, 2017). There appears to be only three other jurisdictions that measure speedy indictment from arrest. One of these requires the defendant also be "held to answer” before the rule is implicated. See Idaho Code Ann. § 19-3501(1) (West, Westlaw current with immediately effective legislation of the 1st Reg. Sess. of the 64th Legis.). Another only applies if the defendant is held in continuous custody. See Fla. R. Crim. P. 3.134 (West, Westlaw current with amendments through Feb. 15, 2017). The third requires either charging or holding in continuous custody. See La. Code Crim. Proc. Ann. art. 701(B)(1)-(2) (West, Westlaw current through 2017 1st Extraordinary Sess.). This review fails to reveal a single jurisdiction that conducts a fact-specific inquiry on the circumstances of arrest before applying the speedy indictment rule. If there are other jurisdictions that have, they appear to have abandoned the approach. Compare United States v. Beberfeld, 408 F.Supp. 1119, 1124 (S.D.N.Y. 1976) (finding the six-month period for speedy trial runs from arrest, regardless of whether a charge is filed), with United States v. Hillegas, 578 F.2d 453, 457 (2d Cir. 1978) ("The line is drawn ... at the point where charges are actually pending against an individual.”).