# IN THE SUPREME COURT OF IOWA

No. 20–1423

Submitted October 21, 2021—Filed February 18, 2022

**STATE OF IOWA,**

Appellee,

vs.

**BRIANNA SUE WATSON,**

Appellant.

---

Appeal from the Iowa District Court for Chickasaw County, Richard D. Stochl, Judge.

Defendant appeals an interlocutory order denying motion to dismiss under the speedy indictment rule. **REVERSED AND REMANDED.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Robert W. Winterton and Judith M. O'Donohoe of Elwood, O'Donohoe, Braun & White, LLP, New Hampton, for appellant.

Thomas J. Miller, Attorney General, Thomas J. Ogden, Assistant Attorney General, for appellee.

**WATERMAN, Justice.**

In this interlocutory appeal, we must decide whether the issuance of citations in lieu of arrest, or rather the defendant's subsequent initial appearance, starts the forty-five-day[1] speedy indictment time clock in Iowa Rule of Criminal Procedure 2.33(2)(*a*) (2020). On July 5, 2020, the defendant was issued citations in lieu of arrest for several misdemeanors. Her initial appearance before a magistrate did not happen until September 21. The State filed its trial information on October 6. The defendant filed a motion to dismiss, alleging the State violated the speedy indictment rule because over ninety days transpired between her citations and indictment without good cause for the delay. The defendant relied on Iowa Code section 805.1(4) (2020), which equates citations with arrests for purposes of rule 2.33(2)(*a*). The State resisted, arguing the clock started with the initial appearance. The State did not argue good cause existed for the delay.

The district court denied her motion, incorrectly applying *State v. Williams*, 895 N.W.2d 856, 867 (Iowa 2017), to conclude that the forty-five-day period was measured from the date of the initial appearance rather than the date the citations issued. The district court also found the COVID-19 pandemic

---

[1]Our court's May 22, 2020 supervisory order, then in effect, extended that deadline to sixty days. The order provides: "Commencing March 17, 2020, for any defendant who is arrested and makes an initial appearance on or before August 3, 2020, the 45-day speedy indictment deadline in Iowa R. Crim. P. 2.33(2)(*a*) is extended to 60 days." Iowa Sup. Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* 6 (May 22, 2020) [hereinafter May 22, 2020 supervisory order], https://www.iowacourts.gov/collections/499/files/1093/embedDocument/ [https://perma.cc/36JN-52SS]. The validity of that extension is not at issue in this appeal because the State missed the extended sixty-day deadline.

constituted good cause for the delay. We granted the defendant's application for discretionary review and retained the case.

On our review, we reverse the district court's ruling. Applying section 805.1(4), we hold that the speedy indictment deadline ran from the date that the citations in lieu of arrest were issued. We also determine that on this specific evidentiary record, the district court erred by ruling that COVID-19 restrictions constituted a good cause for the delay. The trial information was filed electronically. The State did not argue good cause in resisting dismissal, and no record was made to establish why the defendant's initial appearance could not have happened earlier by video or telephone, as our applicable supervisory order allowed.[2]

**I. Background Facts and Proceedings.**

On July 5, 2020, Chickasaw County Deputy Sheriff Adam Hanson pulled over a vehicle for speeding. Hanson detected "the odor of raw marijuana coming from [the] vehicle." The driver, Brianna Watson, "had very bloodshot and glassy eyes" and "displayed a distinct lack of convergence in her left eye." She admitted to using marijuana in the morning, about seven hours earlier, and the deputy found marijuana in the vehicle. Watson was transported to Chickasaw County

---

[2]The May 22, 2020 supervisory order provides:

Through December 31, 2020, magistrates and other judicial officers may conduct initial appearances by video conference or telephone. As before, the defendant may waive initial appearance by executing a written waiver that provides the information that the defendant is entitled to receive at the initial appearance. *See* Iowa R. Crim. P. 2.2(1)–(4)(*a*). Through December 31, 2020, written waivers of initial appearance need not be under oath."

May 22, 2020 supervisory order at 5–6.

Sheriff's Office where she consented to a DataMaster breathalyzer test that detected no alcohol in her blood but then refused to provide a urine sample that could be tested for marijuana metabolites.

In lieu of arrest, Watson was cited and released to her family, presumably because of the limited capacity of the Chickasaw County jail and the sheriff's policy to issue citations for misdemeanors to reduce the risk of COVID-19 transmission. She was cited for operating while under the influence, first offense; possession of marijuana, second offense; and speeding. Criminal complaints for the operating while under the influence and possession charges were electronically filed the same day. Because the COVID-19 pandemic had limited the availability of in-court proceedings, Watson's initial appearance was scheduled for September 21, seventy-eight days later. She appeared in person before a magistrate that day. On October 6, fifteen days after her initial appearance, the State electronically filed the trial information.

Watson had already filed a motion to dismiss on September 17, alleging the State violated the speedy indictment rule, Iowa Rule of Criminal Procedure 2.33(2)(a), which requires an indictment within forty-five days of arrest. After the State filed the trial information, Watson filed an amended motion to dismiss, and the State resisted. On October 27, the court held a hearing in person on the motion to dismiss. The parties presented legal arguments but no evidence.

Watson argued the charges against her should be dismissed because, under Iowa Code section 805.1(4), a citation in lieu of arrest triggers the speedy indictment rule and the State failed to timely file the trial information within

forty-five days of her citations issued July 5, or even within the sixty-day extended deadline under our court's supervisory order. Watson also argued the COVID-19 pandemic alone cannot qualify as good cause for the State's violation of the speedy indictment rule. The State argued it complied with the speedy indictment rule because under *Williams* the speedy indictment rule is triggered when the arrest, or citation in lieu of arrest, is completed by an initial appearance, and the State filed the trial information within forty-five days of Watson's initial appearance. The State did not argue good cause existed for any delay and made no record to establish good cause. During oral argument on the motion to dismiss, the district court brought up the pandemic:

> [THE COURT:] This is -- this court has faced several of these motions since COVID-19. It had become the pattern of law enforcement to cite and release even on serious and aggravated misdemeanor cases in lieu of incarcerating defendants and holding them in the jail so that they could possibly expose other inmates. Because of that, similar to this case, the defendant was cited and released the night of the -- her exposure to law enforcement and a[n] initial appearance date was set outside even of the 45-day speedy indictment rule. . . .
>
> . . . .
>
> THE COURT: As in my other rulings, can you address the good cause exception? Because clearly this is happening in counties around the state where law enforcement were basically taking the position it is not safe for us to take people into custody on serious and aggravated misdemeanors and expose people to COVID-19, therefore, setting the initial appearance date beyond. And our magistrates had been shut down and were not seeing people in person for the specific reason of COVID. And --
>
> [DEFENSE COUNSEL]: Yes.
>
> THE COURT: -- I understand that the Iowa Supreme Court has certain mandates out there, but is it still not good cause to allow law enforcement to say we're going to set these dates out further so

that we're not having people coming into the courthouse so we're not exposing people to COVID-19?

[DEFENSE COUNSEL]: Yes. Well, the Iowa Supreme Court in its orders in March and April and May, it already accounted for the COVID-19 pandemic and its impact on court services by extending the speedy indictment deadline fifteen days. And so -- and despite the COVID-19 pandemic, they deliberately maintained that the speedy indictment deadline would be sixty days and, therefore, some other good cause besides the COVID-19 pandemic would have to be shown for violating the 60-day deadline. I have other criminal cases in other counties and they've all complied with -- in my -- just anecdotally, they've all been continuing, actually, to comply with the 45-day deadline even during this time. And so I think that there would have to be some other good cause besides the COVID-19 pandemic that would need to be shown in the case to violate the 60-day deadline.

. . . .

THE COURT: I'm just making this for the record. I'm aware, like, Fayette County and Howard County have newer jails, much more capacity to hold inmates, where Chickasaw County is far more limited due to the age and size of its jail. Can you address that for me, that perhaps I should -- Do I have to treat every county the same under this COVID-19 epidemic when Chickasaw doesn't have the capacity to house more than three inmates at one at a time in a cell?

[DEFENSE COUNSEL]: Well, in this case it's not a matter of the time it would take for the magistrate to see the defendant. I mean, it's just a matter of just when the Trial Information is filed.

THE COURT: But do you agree with me that magistrates were not seeing defendants for a period of time during the summer of 2020 here in the Chickasaw County Courthouse?

[DEFENSE COUNSEL]: Yes.

THE COURT: And that is why the initial appearance was set outside of the 45-day speedy indictment rule?

[DEFENSE COUNSEL]: Yes. . . .

. . . .

THE COURT: But do you agree with me that that was done because of COVID-19, because we were not seeing individual defendants in the Chickasaw County Courthouse?

[DEFENSE COUNSEL]: I assume that's the case in this county. I know it hasn't been done in other counties.

Neither the district court nor the parties mentioned that our May 22, 2020 supervisory order allowed magistrates to conduct initial appearances by video or phone. The district court denied Watson's motion to dismiss, relying on *Williams* and, alternatively, the COVID-19 pandemic as good cause for the delay.

Watson pleaded not guilty and demanded her right to speedy trial through a written arraignment. On November 3, Watson timely filed an application for permission to appeal the district court's denial of her motion to dismiss. We granted her application, stayed the district court proceedings, and retained the case.

On appeal, Watson relies on Iowa Code section 805.1(4) to argue the speedy indictment rule was triggered when she was issued the citations on July 5. In its appellate brief, the State relies on *Williams* to argue the speedy indictment rule was not triggered until Watson appeared before the magistrate on September 21 and argues good cause based on the COVID-19 restrictions. Watson replies that the State failed to show good cause.

## II. Standard of Review.

"We review interpretations of the speedy indictment rule for errors at law." *State v. Smith*, 957 N.W.2d 669, 675 (Iowa 2021) (quoting *Williams*, 895 N.W.2d at 860). "We are bound by the district court's findings of fact if they are supported by substantial evidence." *Id.* We review rulings on rule 2.33(2) good cause

determinations for abuse of discretion. *State v. Campbell*, 714 N.W.2d 622, 627 (Iowa 2006).

**III. Analysis.**

We must decide whether Watson is entitled to dismissal under the speedy indictment rule. We confront the legal significance of an extended delay between the issuance of citations in lieu of arrest and the defendant's initial appearance. We must decide what triggers the forty-five-day time clock for a citation in lieu of arrest when the defendant is not taken into custody or arrested. Does the time run from the date the citations issued under Iowa Code section 805.1(4), as Watson argues, or from the date of the initial appearance,[3] as the State contends and the district court ruled based on *Williams*? Because we conclude section 805.1(4) controls and *Williams* does not run the time from the initial appearance, we next explain why on this record, the district court erred by ruling good cause for the delay exists due to the COVID-19 pandemic.

**A. Speedy Indictment Violation.** We begin our analysis with the text of Iowa Rule of Criminal Procedure 2.33(2). "It is the public policy of the state of

---

[3]Both arrests under chapter 804 and citations in lieu of arrest under chapter 805 require an initial appearance before a magistrate. *Compare* Iowa Code §§ 804.21(1) ("A person arrested in obedience to a warrant shall be taken without unnecessary delay before the nearest or most accessible magistrate."), *and* .22(1) ("When an arrest is made without a warrant, the person arrested shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the judicial district in which such arrest was made or before a magistrate in an approved judicial district . . . ."), *with id.* §§ 805.2 ("The citation shall include . . . the time and place at which the person is to appear in court, and the penalty for nonappearance."), .3 ("The person's signature shall also serve as a written promise to appear in court at the time and place specified."), .4 ("The law enforcement officer issuing the citation shall cause to be filed a complaint in the court in which the cited person is required to appear, as soon as practicable, charging the crime stated in said notice."), *and* .5 ("Any person who willfully fails to appear in court as specified by the citation shall be guilty of a simple misdemeanor.").

Iowa that criminal prosecutions be concluded at the earliest possible time consistent with a fair trial to both parties." Iowa R. Crim. P. 2.33(2). The speedy indictment rule further states:

> When an adult is arrested for the commission of a public offense . . . and an indictment is not found against the defendant within 45 days, the court must order the prosecution to be dismissed, unless good cause to the contrary is shown or the defendant waives the defendant's right thereto.

*Id.* r. 2.33(2)(*a*). As we noted in *Williams*, "The speedy indictment rule gives effect to the constitutional guarantee of speedy trial." 895 N.W.2d at 866; *see also* Iowa Const. art. I, §10.

> The purpose of these protections, both constitutional and statutory, is to relieve one accused of a crime of the hardship of indefinite incarceration awaiting trial or the anxiety of suspended prosecution, if at liberty on bail, and to require courts and peace officers to proceed with the trial of criminal charges with such reasonable promptness as proper administration of justice demands.

*Williams*, 895 N.W.2d. at 866 (quoting *State v. Allnutt,* 156 N.W.2d 266, 268 (Iowa 1968), *overruled on other grounds in State v. Gorham,* 206 N.W.2d 908, 913 (Iowa 1973) (en banc)). Another purpose served by prompt prosecution is avoiding loss of evidence. *See id.* at 867.

1. *Citations in lieu of arrest under Iowa Code section 805.1(4).* Iowa Code section 805.1(4) states, "The issuance of a citation in lieu of arrest . . . shall be deemed an arrest for the purpose of the speedy indictment requirements of rule of criminal procedure 2.33(2)(a), Iowa court rules." Under the plain meaning of this statute, a citation in lieu of arrest constitutes the "arrest" for speedy indictment purposes. Dismissal of the charges was thus required. *See State v.*

*Utter*, 803 N.W.2d 647, 652–53 (Iowa 2011) (holding forty-five-day window commenced with issuance of the citation pursuant to Iowa Code section 805.1(4) and counsel was ineffective in failing to move to dismiss untimely indictment), *overruled in part on other grounds by Schmidt v. State*, 909 N.W.2d 778, 784, 790 (Iowa 2018).

Applying section 805.1(4), rule 2.33(2)(*a*), and *Utter*, we hold the forty-five-day clock began running on the date the citations were issued, regardless of the date of Watson's initial appearance. The prosecution, not the defendant, pays the price when the initial appearance is delayed so long that a subsequent indictment is untimely, unless the State establishes good cause for the delay.

2. Williams *does not preclude dismissal here.* We now address *Williams* because the State and district court misread its holding as measuring the forty-five-day period from the date of the initial appearance rather than the date of the arrest, as we actually held in that case. The district court denied Watson's motion to dismiss based on that misinterpretation, and the State continues to argue its misinterpretation of *Williams* on appeal.[4]

We clarified the speedy indictment rule in *Williams*. 895 N.W.2d at 860–66. Our holding addressed physical arrests under Iowa Code chapter 804, not citations in lieu of arrest under chapter 805, and our opinion did not cite *Utter*.

---

[4]Judges on the court of appeals have disagreed on whether under *Williams* the forty-five-day time clock runs from the date of the initial appearance or the date of arrest. *Compare State v. Khan*, No. 20–0869, 2021 WL 3661411, at *2 (Iowa Ct. App. Aug. 18, 2021) (date of arrest), *with id.* at *3–4 (Greer, J., dissenting) (date of initial appearance). We take this opportunity to clear up the confusion.

*Id.* Williams was suspected of sexual abuse after two fifteen-year-old victims reported being raped by multiple assailants at a gang-affiliated house. *Id.* at 858. Williams was stopped exiting the house, taken into custody, Mirandized, and interrogated. *Id.* He claimed he had consensual sexual relations with both victims, voluntarily provided a DNA sample, and was released the same day without any criminal charges filed. *Id.* Over a year later, after the final DNA test results came back, an arrest warrant was issued, and Williams was arrested and brought before a magistrate, 505 days after the initial incident. *Id.* at 859, 868 (Mansfield, J., concurring specially). The State filed the trial information 510 days after the initial incident. *Id.* at 859 (majority opinion). The defendant filed a motion to dismiss for violation of the speedy indictment rule. *Id.* The district court denied his motion. *Id.* We granted his request for discretionary review and transferred the case to the court appeals, which reversed based on *State v. Wing*, a 2010 decision that overruled a line of precedent to hold the speedy indictment deadline is triggered when the defendant is first brought into custody, or "seized" for Fourth Amendment purposes, even if not charged or formally arrested. *Id.* at 867–69 (Mansfield, J., concurring specially) (analyzing precedent culminating with *State v. Wing*, 791 N.W.2d 243 (Iowa 2010)). We granted the State's application for further review. *Id.* at 859 (majority opinion).

We overruled *Wing* to hold the speedy indictment rule is triggered by the arrest completed by an initial appearance before a magistrate. *Id.* at 867.

> Arrest for the purposes of the speedy indictment rule requires the person to be taken into custody in the manner authorized by law. The manner of arrest includes taking the arrested person to a

> magistrate. The rule is triggered from the time a person is taken into custody, but only when the arrest is completed by taking the person before a magistrate for an initial appearance.

*Id.*; *see also Smith*, 957 N.W.2d at 676 (concluding the speedy indictment rule was not triggered by the filing of the criminal complaint when the defendant in prison for another crime had not been served with the arrest warrant or appeared before a magistrate on the new charge). We determined the speedy indictment rule was not violated in *Williams* because the execution of the arrest warrant completed by his initial appearance triggered the forty-five-day countdown from that formal arrest—not his detention and release without criminal charges a year earlier. 895 N.W.2d at 865 ("Thus, while *the time* for bringing the indictment runs from the initial arrest, *the necessity* for a speedy indictment following an arrest is derived only from a finding of probable cause or the defendant's waiver of a probable-cause hearing.").

We emphasized that the speedy indictment "rule is triggered from the time a person is taken into custody, but only when the arrest is completed by taking the person before a magistrate for an initial appearance." *Id.* at 867. We recognized that " '[n]ormally, the date of an arrest and the date of prosecution follow hand in hand,' but they can 'become detached.' " *Id.* at 866 (quoting *State v. Penn-Kennedy*, 862 N.W.2d 384, 387–88 (Iowa 2015)). Our holding avoided inconsistent applications of the speedy indictment rule by applying a common measuring point: the date of the physical arrest, provided it is later completed upon the initial appearance. *Id.* The district court in this case erred by misapplying *Williams*. The district court instead should have applied *Utter*, as

discussed above, and counted the forty-five days from the date the citations issued rather than Watson's initial appearance.

**B. Good Cause.** We next address whether the district court erred by ruling that the COVID-19 pandemic provided good cause for the delay in indicting Watson. The State bears the burden of establishing good cause under rule 2.33(2)(*a*). *Ennenga v. State*, 812 N.W.2d 696, 698, 706, 708 (Iowa 2012) (holding defense counsel was ineffective because "the State [did] not put forth *any* credible reason for the delay" under speedy indictment rule and "the State could not have shown good cause for the delay had this issue been raised prior to [the] plea"); *see also Campbell*, 714 N.W.2d at 627–28 (requiring State to prove good cause under rule 2.33(2)(*b*)). As noted, the State did not argue good cause in its resistance to Watson's motion to dismiss. Nor did the State offer any evidence that the pandemic prevented setting Watson's initial appearance earlier, by video or phone if not in person, or why the trial information could not have been filed electronically within the deadline. Our applicable supervisory order of May 22, 2020, expressly allowed magistrates to conduct initial appearances by video or phone. On this record, we hold the State failed to meet its burden to show good cause and it was an abuse of discretion for the district court to hold otherwise. Watson is entitled to dismissal under rule 2.33(2)(*a*).

The State argues good cause for the delay beyond sixty days in this case is established by our COVID-19 supervisory orders suspending jury trials and discouraging in-person hearings. We disagree. Our applicable supervisory order of May 22, 2020, merely provided a fifteen-day extension of the speedy

indictment deadline from forty-five to sixty days, full stop. Rule 2.33(2)(*a*) permits further delays for good cause, but the State made no record in district court explaining why it could not schedule Watson's initial appearance or file the trial information within forty-five or sixty days. As defense counsel noted on the record, prosecutors in nearby counties were complying with the rule 2.33(2)(*a*) deadlines. We leave the door open for prosecutors to establish good cause for delaying the indictment under a different record.

Our holding is limited to the speedy indictment rule only and does not address the showing required to establish good cause for delay under Iowa Rule of Criminal Procedure 2.33(2)(*b*), the speedy trial rule. Criminal trials are conducted in person and require summoning citizens for jury duty. Most courts confronting the issue have suspended speedy trial deadlines when jury trials are curtailed because of the pandemic. *See, e.g.*, *United States v. Olsen*, 995 F.3d 683, 692–93, 695 (9th Cir. 2021) (per curiam) (reversing speedy trial violation dismissal because the district court failed to properly balance "the best interest of the public and the defendant in convening a speedy trial" in the context of COVID-19 and holding suspension of jury trials due to COVID-19 required continuance of trial date), *amended and superseded on denial of reh'g en banc*, 21 F.4th 1036 (9th Cir. 2022) (per curiam); *State v. Brown*, 964 N.W.2d 682, 693 (Neb. 2021) (determining "that the pandemic-related delays were for 'good cause' under the statutory analysis" and "that the delays were for a 'valid reason' for purposes of the constitutional analysis"); *State ex rel. Porter v. Farrell*, 858 S.E.2d 897, 907 n.15 (W. Va. 2021) (collecting cases). *But see Ex parte Sheffield*, 611

S.W.3d 630, 632, 634–36 (Tex. App. 2020) (holding COVID-19 cannot justify a denial of the right to a speedy trial because "a state of disaster alone cannot indefinitely pretermit enjoyment of the right").

**IV. Conclusion.**

For those reasons, we reverse the district court's ruling denying Watson's motion to dismiss. We remand the case for an order dismissing the criminal charges against her under Iowa Rule of Criminal Procedure 2.33(2)(*a*).

**REVERSED AND REMANDED.**