# IN THE COURT OF APPEALS OF IOWA

No. 24-0405
Filed October 1, 2025

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**JOHN EDDIE HANES III,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, John Telleen, Judge.


John Eddie Hanes III appeals his convictions and sentences after a jury found him guilty of first-degree murder and intimidation with a dangerous weapon. **AFFIRMED.**


Jessica A. Millage of Flanagan Law Group, PLLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.


Considered without oral argument by Tabor, C.J., Sandy, J., and Potterfield, S.J.*  Telleen, S.J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**POTTERFIELD, Senior Judge.**

John Eddie Hanes III appeals his convictions and sentences after a jury found him guilty of first-degree murder and intimidation with a dangerous weapon. Hanes contends that he was denied his right to counsel and the trial court abused its discretion by denying his motion for new trial. We cannot consider these claims on direct appeal, either because Hanes failed to preserve error or we are prohibited by statute. Hanes also challenges the requirement that he serve a minimum term of incarceration before he is eligible for parole, but he fails to show the sentencing court abused its discretion. We therefore affirm.

**I. Background Facts and Proceedings.**

Fourteen-year-old Jamon Winfrey was shot and killed in February 2021 during a gang-related shooting in Davenport. Winfrey was a passenger in the front seat of a car associated with a gang when an SUV carrying members of a rival gang approached. Although both Winfrey and the car's driver were unarmed, the SUV's passengers shot at them. Winfrey exited the car, ran, and was shot once in the back with a 9mm bullet fired from a Glock. The bullet pierced Winfrey's lung and an artery, and he died a short time later. After investigating and interviewing witnesses, police identified Hanes as one of two SUV passengers who shot at Winfrey's vehicle. Hanes used a Glock while the other passenger used a .40 caliber pistol.

In April 2022, the State charged Hanes with murder in the first degree and intimidation with a dangerous weapon. About two weeks before trial was scheduled to begin in February 2023, the Iowa Supreme Court suspended Hanes's attorney from the practice of law for thirty days. Hanes's attorney moved to

continue the trial, citing "potential scheduling conflict, availability of witnesses, and availability of Defense counsel." The court granted the motion, and trial began in May 2023. At its conclusion, the jury found Hanes guilty as charged.

The court initially scheduled the sentencing hearing to take place in July 2023. But after Hanes's counsel requested three continuances and the State requested one, the court sentenced Hanes in February 2024. Because Hanes was seventeen years old at the time he committed the crimes, the court imposed a sentence on the murder conviction of life in prison with the possibility of parole after serving a minimum term of twenty years. It sentenced Hanes to serve ten years for intimidation with a dangerous weapon and ordered the sentences to run concurrently.

**II. Sixth Amendment Claims.**

Hanes first contends he was denied his right to counsel and a fair trial under the Sixth Amendment of the U.S. Constitution. He cites three instances in which he alleges his trial counsel's performance was so defective that it amounted to structural error. These claims are related to his trial counsel's (1) thirty-day suspension in February 2023, (2) failure to timely file a motion for new trial, and (3) request for a sentence that the court could not legally impose.

On the first claim, Hanes argues that he was denied counsel because the suspension of his court-appointed attorney's license for thirty days prevented him from communicating with his attorney during a key period of trial preparation. *Cf. Riggins v. Nevada*, 504 U.S. 127, 144 (1992) (Kennedy, J., concurring) ("We have held that a defendant's right to the effective assistance of counsel is impaired when he cannot cooperate in an active manner with his lawyer."). The State responds

that Hanes never raised this claim below and thus it is not preserved for review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Hanes, in turn, claims that the issue could not have been presented below, citing *State v. Williams*, 895 N.W.2d 856, 859 n.2 (Iowa 2017), for the proposition that error preservation requirements do not apply when a question is presented that only the supreme court can answer. But the supreme court has since clarified that *Williams* did not change the duty of the party who lost in district court to preserve error for appeal. *Ruiz v. State*, 18 N.W.3d 453, 457 (Iowa 2025) (distinguishing a postconviction-relief applicant's request for adoption of an equitable tolling doctrine, which he raised for the first time on appeal following dismissal, from the facts of *Williams*, in which the State as the prevailing party in district court sought for the first time on appeal to overturn a line of cases addressing the speedy indictment rule). Because Hanes failed to raise this issue to the district court, we do not consider it on appeal.

As to the second and third arguments, Hanes is arguing ineffective assistance of counsel. *State v. Williams*, No. 24-0797, 2025 WL 1704308, at *2 (Iowa Ct. App. June 18, 2025) (finding a defendant's structural-error claim alleging "effectively a complete denial" of counsel was ineffective assistance by another name). But we cannot decide such claims on direct appeal. *See* Iowa Code § 814.7 (2024) (stating that claims of ineffective assistance of counsel "shall not be decided on direct appeal from the criminal proceedings"); *State v. Treptow*, 960 N.W.2d 98, 109 (Iowa 2021) ("Because we have just upheld the constitutionality of

section 814.7, this court is without authority to decide ineffective-assistance-of-counsel claims on direct appeal."). We do not consider them further.

### III. New Trial.

Hanes next contends the district court abused its discretion by denying his motion for new trial because the jury's verdict is contrary to the weight of the evidence. But both the motion and ruling were based on alleged deficiencies in the court's instructions to the jury, not on the weight of the evidence. Because Hanes never challenged the weight of the evidence supporting his convictions, error is not preserved for our review. *See State v. Kramer*, No. 16-2048, 2018 WL 346454, at *6 n.7 (Iowa Ct. App. Jan. 10, 2018) (concluding that a weight-of-the-evidence claim was not preserved for review on appeal because the defendant's motions for new trial never "specifically challenged the weight of the evidence").

### IV. Sentence.

Finally, Hanes challenges the requirement that he serve a minimum of twenty-five years in prison before he is eligible for parole. We review sentencing decisions for abuse of discretion. *See State v. Moore*, 16 N.W.3d 58, 64 (Iowa Ct. App. 2024). The court abuses its discretion if it bases a sentence "on grounds or for reasons that were clearly untenable or unreasonable." *Id.* (quoting *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002)). "In applying this standard, we assess whether the district court weighed the societal goals of sentencing—rehabilitation and impact on the community." *Id.*

As a juvenile at the time of the offense, Hanes is entitled to an individualized sentencing hearing. *See State v. Lyle*, 854 N.W.2d 378, 400-04 (Iowa 2014). During this hearing, the court must give "complete and careful consideration of the

relevant mitigating factors of youth." *Moore*, 16 N.W.3d at 64 (quoting *State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017)). These include:

> (1) the age of the offender and the features of youthful behavior, such as "immaturity, impetuosity, and failure to appreciate risks and consequences";
> (2) the particular "family and home environment" that surround the youth;
> (3) the circumstances of the particular crime and all circumstances relating to youth that may have played a role in the commission of the crime;
> (4) the challenges for youthful offenders in navigating through the criminal process; and
> (5) the possibility of rehabilitation and the capacity for change.

*Id.* (quoting *Lyle*, 854 N.W.2d at 404 n.10). Hanes focuses on the third element, the circumstances of the crime and all circumstances relating to youth that may have played a role in its commission. In considering the circumstances of a juvenile's crime, "attention must be given to the juvenile offender's actual role and the role of various types of external pressure," which "is particularly important in cases of group participation in a crime." *Roby*, 897 N.W.2d at 146.

At the sentencing hearing, the court made findings on each of the mitigating factors of youth. In addressing the circumstances of Hanes's crime and the role external pressure played in its commission, the court stated:

> I don't believe there was a peer pressure here. I don't believe that there was somebody putting you up to this. I believe, based on the testimony that I heard, that you were right there in the thick of it, if not an instigator, and if not one of the ones—I mean, there was not, oh, somebody put you up to this. You willingly shot many, many rounds . . . , launched a barrage of bullets at the other car and at the party, Mr. Winfrey. I think the trial testimony I heard indicated that this is not a peer pressure event. This is a willing shooting by you against an opposition group. "There go the opps." A rival gang.
> I heard all kinds of testimony that I found credible about [your gang] . . . , but you even denied being a member of the gang to one of the experts. Well, I'm sorry, sir, but you pled guilty to criminal gang participation previously . . . in your criminal history.

Hanes argues that the evidence shows that peer pressure played a role in the crime. That evidence shows that at the time of the shooting, Hanes was seventeen, in a gang, and in the company of three adult members of that gang. Someone shouted, "There go the opps," meaning the opposition, a rival gang, and an adult was first to open fire. The expert witness Hanes retained testified at the sentencing hearing about the role that his "peer group"—meaning the gang—played in his life at the time:

> Hanes . . . had a strong attachment to this peer group. And part of what appeared to be a challenge in this peer group was this glorification of violence. And Mr. Hanes participated in this glorification of violence as well. So doing things like displaying pictures, holding guns.
>
> We also think that . . . part of the conflicts that appeared to be happening at the time with respect to these two different antisocial peer groups, Mr. Hanes's group had some desire to exact justice or retribution towards another peer group as well, so this conflict between the two peer groups also appeared to play a big role in his decision-making.
>
> So the culture of this antisocial peer group, Your Honor, in our opinion, seemed to be one of this . . . glorification of violence, needing to maintain status or dominance within their perceived community, needing to exact justice or retribution towards perceived wrongs.

He claims that this record "reflects peer pressure most certainly played a role."

The district court drew a different conclusion from the evidence. Although Hanes's expert discussed the pressures of gang culture, the court looked for evidence of specific external pressure exerted on Hanes in the moments leading up to and during the shooting. It found none. There was no discussion before the shooting began, and no one told Hanes to shoot.

The court had broad discretion in relying on information provided at trial and sentencing to determine whether the circumstances of the crime, including the role

of peer pressure, are mitigating factors of youth. *See State v. Headley*, 926 N.W.2d 545, 550 (Iowa 2019). The court "was free to accept or disregard evidence according to its own evaluation of credibility." *State v. Farnum*, 397 N.W.2d 744, 750 (Iowa 1986). While the court found both expert witnesses who testified at the sentencing hearing credible, it was allowed to draw its own inferences from the evidence and assign it the weight it saw fit. *See State v. Guise*, No. 17-0589, 2018 WL 2084846, at *9 (Iowa Ct. App. May 2, 2018) (en banc) (McDonald, J., dissenting) ("The sentencing court acts within its core competency in receiving the evidence, determining the appropriate inferences, if any, to be drawn from the evidence, and determining the weight of the evidence, all without cautionary instructions."), *majority decision vacated*, 921 N.W.2d 26 (Iowa 2018). Hanes disagrees with the conclusion the court drew from the evidence about the circumstances of the crime and the sentence it imposed. But disagreement is not enough. While a different judge might have drawn a different conclusion and imposed a different sentence, it does not amount to an abuse of discretion. *See, e.g.*, *Formaro*, 638 N.W.2d at 725 (recognizing that while application of sentencing goals and factors to individual cases will not always lead to the same sentence, it is not error and instead reflects "discretionary nature of judging and the source of the respect afforded by the appellate process"). Finding no abuse of discretion, we affirm.

**AFFIRMED.**